

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-8-2004

# USA v. Haywood

Precedential or Non-Precedential: Precedential

Docket No. 01-4086

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Haywood" (2004). *2004 Decisions.* Paper 750.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/750

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL
UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT

No. 01-4086

UNITED STATES OF AMERICA

v.

IRA HAYWOOD,

Appellant

Appeal from the United States District
Court
for the Virgin Islands
(Crim. No. 00-cr-0029-2)
District Judge: Hon. Thomas K. Moore

Argued: April 28, 2003

Before: ROTH, McKee and COWEN,
*Circuit Judge*s

(Filed: April 8, 2004)

STEPHEN A. BRUSCH, ESQ. (Argued)
28-29 Norre Gade, 2nd Floor
P.O. Box 988
St. Thomas, U.S.V.I. 00804
*Attorney for Appellant*

DAVID M. NISSMAN, ESQ.
United States Attorney
NELSON L. JONES, ESQ. (Argued)
Assistant United States Attorney
U.S. Courthouse & Federal Building
5500 Veterans Drive, Suite 260
Charlotte Amalie, St. Thomas, U.S.V.I.
00802

*Attorneys for Appellee*

OPINION

McKEE, *Circuit Judge*.

Ira Haywood appeals his convictions for robbery under Virgin Islands law and for several federal charges arising out of that robbery. For the reasons that follow, we will affirm his robbery conviction and his convictions for the federal crimes of interference with commerce by robbery and possession of a firearm during a crime of violence. However, we will reverse his conviction for possession of a firearm with an obliterated serial number and remand for a new trial. We will also reverse his conviction for possession of a firearm within 1000 feet of a school but remand with a direction to enter a judgment of acquittal on that charge.

**I. FACTS**

Viewed in the light most favorable to the government, the trial evidence showed that on December 28, 1999, at approximately 8:00 p.m., America's Bar and Poolroom, located in St. Thomas, United States Virgin Islands, was robbed. The owner, America Santiago, and a customer, Carmen Rodriquez, were in the bar at the time. Santiago testified that two masked men entered the bar carrying firearms. Santiago described one firearm as very big and one as smaller. She also described one robber as being "short and a little strong," and the other as "tall, but a little darker." She testified that the men demanded money and fled with

approximately $40 to $60 in bills and approximately $10 in coins.[1]

Rodriquez testified that she saw two masked men come into the bar and demand money. The men entered with two guns, a big one and a small one. She said she was scared and threw $15 at the masked robbers.

Duke Charles, a cab driver who lives next door, approximately fifty feet from the bar, saw two men standing outside the bar at approximately 8:00 p.m. on the night of the robbery. One man pulled a small black gun from his waist, and the two men then entered the bar. Charles testified that the two men wore white T-shirts and were not wearing masks when he saw them enter the bar. He immediately called the police on his cell phone, then ran upstairs to the roof of the building. He testified that from the roof, he heard voices saying, "This is a hold-up. Give me the money." Charles also testified that he saw the men leave the bar and walk up the street towards the Tower Apartments. Shortly thereafter, Charles observed a green car come down the street carrying the same two men that he had observed entering and leaving the bar. Charles was in constant contact with the Virgin Islands Police Department from the time of his initial call until he saw the police approaching. He saw the green car with the two men inside stop at a stop light before making a left turn and heading in an easterly direction. Charles conveyed this information to the police and watched as the police chased the green car with the two men inside. However, Charles was unable to identify the two robbers in court.

Virgin Islands Police Officer Alphonso Boyce testified that he and Officer Conrad Gilkes heard the radio transmission regarding a robbery in progress and proceeded to the area. Boyce also heard the subsequent transmission regarding the direction of the green car. He then saw the car and gave chase.

The green car eventually crashed into a pole in the area of the Enid Bea Public Library. Ira Haywood, the driver, and Kevin White, the passenger, were ordered out of the car. When Haywood got out, Boyce saw part of a gun fall from Haywood's waist. A search of the car disclosed the bottom portion of the firearm, a shotgun, ammunition, a ski mask, gloves, tools and numerous coins. Sandra Koch, a Federal Bureau of Investigation hair and fiber expert, later matched hair fiber samples from Haywood with hair fiber found in the ski mask recovered from the car.

Virgin Islands Police Detective David Monoson found a shotgun between the seats of the car Haywood was driving. A firearm frame and

---

[1]Santiago also testified that she sold liquor, Heineken beer and Coors Light beer at the bar. As we will discuss below, this is important for purposes of federal jurisdiction.

2

magazine were also found under the driver's seat. Monoson testified that $15 was found on the dash board of the car, $27 was removed from blue pants on the pavement outside the car and coins were found on the driver's side of the car. Monoson further testified that the serial numbers from the shotgun and handgun had been obliterated, and that the handgun had been manufactured in California and the shotgun had been manufactured in Connecticut.

Virgin Islands Police Detective Warrington Tyson later measured the distance from America's Bar to the Ulla Muller Elementary School. That distance was 421 feet, 4 inches. Tyson testified that he took the measurement from the bar to the entrance gate of the school.

On March 2, 2002, Haywood and White were charged in a ten count superseding indictment with the following violations: Count One charged both Haywood and White with interference with commerce, in violation of 18 U.S.C. §§ 1951 and 2; Count Two charged Haywood with possession of a firearm during the commission of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1) and 2; Count Three charged White with possession of a short barreled shotgun during (and in relation to) a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1) and 2; Count Four charged both with robbery in the first degree, in violation of 14 V.I.C. §§ 1862(2) and 11; Count Five charged Haywood with

possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B); Count Six charged White with possession of a shotgun during (and in relation to) a crime of violence, in violation of 14 V.I.C. § 2253(a); Count Seven charged both with possession of a firearm within a thousand feet of a school, in violation of 18 U.S.C. §§ 922(q)(2)(A) and 2. Counts Eight, Nine and Ten charged Haywood with separate offenses occurring before the robbery of the bar. Those counts were severed and subsequently dismissed without prejudice.

Virgin Islands Police Detective Darren Foy testified that the bar is a business established in the Virgin Islands selling liquor and beer as well as non alcoholic beverages. He also testified that the products sold at the bar, specifically, Heineken beer and Miller beer, come from mainland United States.

Haywood and White testified in their own defense, and both denied participating in the robbery. Haywood claimed that he did not stop the car he was driving when chased by police because he had marijuana and was afraid that he would be arrested on drug charges.

The jury found Haywood and White guilty as charged. Haywood was sentenced to a total period of imprisonment of 125 months, and then

3

filed this appeal.[2]

## II. DISCUSSION

Haywood makes a number of arguments in his appeal. Each is considered separately below.

### A. Insufficient Evidence of Robbery.[3]

Haywood argues that all of his

---

[2]White also filed an appeal. We affirmed his judgment of conviction and sentence on June 14, 2002.

[3]"In reviewing a jury verdict for sufficiency of the evidence, we must consider the evidence in the light most favorable to the government and affirm the judgment if there is substantial evidence from which a rational trier of fact could find guilt beyond a reasonable doubt." *United States v. Brown*, 3 F.3d 673, 680 (3d Cir. 1993) (citation and internal quotations omitted). "In determining whether evidence is sufficient, we will not weigh the evidence or determine the credibility of witnesses. . . . Appellate reversal on the grounds of insufficient evidence should be confined to those cases where the failure of the prosecutor is clear. The evidence need not be inconsistent with every conclusion save that of guilt, so long as it establishes a case from which a jury could find the defendant guilty beyond a reasonable doubt. . . . A defendant challenging the sufficiency of the evidence bears a heavy burden." *United States v. Casper*, 956 F.2d 416, 421 (3d Cir. 1992) (citations omitted).

convictions, on Counts One, Two, Five and Seven, must be reversed because there was insufficient evidence that he robbed the bar. He begins by noting that neither Santiago nor Rodriquez could identify him as one of the robbers. He then argues that the only evidence connecting him to the robbery was Charles's testimony that the car carrying the robbers was the same car that Charles told the police to follow, and the police officers' testimony that the car they followed at the start of the chase was the same car that crashed into the library. Accordingly, Haywood claims that the only established facts are that the bar was robbed and that he was driving a green car that crashed into the library. He contends that all of the other evidence was circumstantial and lacked a logical and convincing connection to the established facts.

In support of his claim of insufficient evidence, Haywood notes that Charles testified that he saw only one small gun, which was removed from the waistband of one of the men right before they entered the bar. Haywood claims that since Charles could see one of the men enter the bar with a small gun, it is inconceivable that he would not also have seen the shotgun used by the other man. Yet, Charles never testified about the other man carrying a shotgun. Moreover, Charles testified that both men were unmasked before they entered the bar, but Santiago and Rodriquez testified that the robbers were masked when they entered the bar. Further, while Charles testified that the robbers

4

wore white T-shirts, neither Santiago nor Rodriquez gave a description of the clothes the robbers were wearing. In addition, Officer Boyce testified that the change found at the scene of the arrest was in quarters, nickels and dimes, while Santiago testified that the $10 in change she gave to the robbers was only in quarters. In addition, Boyce testified that the car that he followed was blue, but Charles testified that the car he told the police to follow was green. Finally, Haywood argues that Boyce testified that the slide of a gun fell out of Haywood's waistband when Haywood got out of the car. However, Detective Monoson testified that he was told that the slide was thrown out of the car during the pursuit. In Haywood's view, the lack of direct evidence linking him to the robbery together with the inconsistent circumstantial evidence demonstrates that there was insufficient evidence to sustain his conviction for robbery. Therefore, all convictions must be reversed. We disagree. There was more than sufficient evidence to sustain Haywood's robbery conviction.

The fact that neither Santiago nor Rodriguez could identify Haywood as one of the robbers is unremarkable given that both women testified that the men who robbed the bar were masked. As noted above, the evidence showed that two masked men, each carrying a firearm, robbed the bar. One firearm was smaller than the other. One man was short and strong and the other was taller but a little darker. Testimony allowed this jury to reasonably conclude beyond a reasonable doubt that Haywood was the shorter of the two men and that the shorter man had the smaller firearm.

Charles called the police on his cell phone while he was still observing the two men he saw outside of the bar. He was still watching as they went into the bar with guns. He then ran up to the top of his building where he said he could see the entire area. He testified that he heard someone say "Give me money. This is a holdup." Charles watched the men as they left the bar and made a left turn into some condominiums. He then saw them coming down the street full speed in a green car. They stopped at a stoplight because there was another car in front of them, and then turned left. Charles then saw the police car and told them that the robbers were making a left turn. He continued watching as the police started chasing the car with the two robbers in it.

Boyce's testimony establishes that the car he stopped was the same one that Charles saw. Boyce told the occupants to get out of the car and Haywood, the driver, did as instructed. When he got out, the slide for the top of a gun dropped to the ground from inside Haywood's waistband. The car was searched and the bottom half of the gun that went with the slide was recovered, as well as a ski mask, gloves and ammunition. Several coins had fallen from the car as well.

Lucy Krigger, the police dispatcher,

testified that Charles gave the police the license plate number of the car the robbers were driving. As noted, Koch, the FBI witness, testified that a hair sample taken from Haywood matched the hair found in the ski mask.[4]

Given this testimony as well as the testimony about the shot gun that was recovered, it is disingenuous to claim that the evidence was insufficient to convict Haywood of robbing the bar.

## B. Possession of a Firearm with an Obliterated Serial Number.

Haywood was also convicted of Count Five, possession of a firearm with an obliterated serial number. Title 18 U.S.C. § 922(k) provides:

> It shall be unlawful for any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered or to possess or receive any firearm which has had the importer's or manufacturer's serial number removed,

obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce.

The district court instructed the jury on the § 922(k) charge as follows:

> First, that on the same day, December 28 of last year, here in St. Thomas, Ira Haywood knowingly possessed a firearm, that is, a .380 Davis Industries pistol, which firearm at some point in time had been transported in interstate commerce, and from which the manufacturer's serial number had been removed and obliterated.

App. 506-07. Haywood argues that the district court's instruction was erroneous because it did not require the government to prove beyond a reasonable doubt that Haywood knew that the serial number on the pistol had been obliterated when he possessed it.

Title 18 U.S.C. § 924(a)(1)(B) governs the penalty provisions for violations of § 922. "In 1986 Congress enacted the Firearms Owners' Protection Act, which modified the penalty provisions of 18 U.S.C. § 924. . . . Where the preexisting statute had provided criminal penalties for '[w]hoever violates any provision of this chapter,' . . . the amended version, insofar as here relevant, imposes criminal penalties on 'whoever *knowingly*

---

[4]The jury could certainly conclude that, given the climate and the amount of snow that falls in St. Thomas, Haywood did not have a ski mask because he was on his way to or from the slopes.

violates subsection . . . (k) . . . of section 922.'" *United States v. Haynes*, 16 F.3d 29, 33-4 (2d Cir. 1994) (citations omitted) (emphasis in original). The courts of appeals that have considered the issue after this amendment became effective have all held that a § 922(k) conviction now requires not only knowing possession of the firearm, but also knowledge that the serial number on the firearm had been obliterated. *See United States v. Abernathy*, 83 F.3d 17, 19 n.1 (1st Cir. 1996); *United States v. Fennell*, 53 F.3d 1296, 1300-01 (D.C. Cir. 1995); *United States v. Haynes*, 16 F.3d at 34; *United States v. Hooker*, 997 F.2d 67, 72-74 (5th Cir. 1993). Thus, pursuant to the amendment, knowledge that the serial number is obliterated at the time of possession is an element of the offense of a § 922(k) violation. We therefore hold that the time of the weapon's possession is an element of a violation of § 922(K). Accordingly, the district court's instruction was erroneous.

However, Haywood's trial counsel did not object to the instruction, and therefore Haywood must establish plain error.[5] *United States v. Olano*, 507 U.S. 725, 734-735 (1993). "Under [the plain error] test, before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3)

---

[5]Had Haywood objected to the instruction, this issue would be subjected to a harmless error analysis. *Neder v. United States*, 527 U.S. 1, 7-15 (1999).

that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 467 (1997) (citations, internal quotations and brackets omitted). In the case of an erroneous jury instruction, "the relevant inquiry . . . is whether, in light of the evidence presented at trial, the failure to instruct had a prejudicial impact on the jury's deliberations, so that it produced a miscarriage of justice." *United States v. Xavier*, 2 F.3d 1281, 1287 (3d Cir. 1993) (citations and internal quotations omitted). "In other words, did the error seriously affect the fairness, integrity or public reputation of judicial proceedings?" *Id*. (citation, internal quotations and brackets omitted). Although we have not adopted a *per se* rule, we have held that "the omission of an essential element of an offense [in a jury instruction] *ordinarily* constitutes plain error." *Id*. (citation omitted) (emphasis in original). "[This] is consistent with the Supreme Court's instruction that due process requires 'proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged.'" *Id*. (quoting *In re Winship*, 397 U.S. 358, 364 (1970)).

Here, the district court's failure to instruct the jury that knowledge of the obliterated serial number is an element of the crime undoubtedly had an effect on the jury's deliberations. "[T]he jury could not

have been expected to make a finding beyond a reasonable doubt as to [Haywood's knowledge of the obliterated serial number] in the absence of an instruction to do so." *Xavier*, 2 F.3d at 1287. Therefore, the inquiry becomes whether the failure to instruct was prejudicial, i.e., did the failure to instruct on knowledge affect Haywood's due process rights in a manner that "'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *Olano*, 507 U.S. at 736.

We believe it did. The government argues that because Haywood possessed the pistol, hid it on his person and used it in a robbery, the jury could reasonably infer that Haywood would have examined the pistol at some point before the robbery to see if it worked. In addition, the government notes that at some point after the robbery, Haywood disassembled the pistol. Therefore, given these considerations, the jury could have reasonably inferred that Haywood discovered that the pistol's serial number had been obliterated. That is true. The jury could have found beyond a reasonable doubt that Haywood knew the gun had an obliterated serial number had it been instructed of the need to do so under § 922(k). However, no such instruction was given and the government's argument about the jurors' thought process therefore rests upon pure speculation. Haywood has a due process right to "proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [he] is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Speculation about what the jury could have done if properly instructed falls woefully short of that burden.

Accordingly, we find that the district court's failure to instruct the jury on the element of knowledge of the obliterated serial number amounted to plain error. Therefore, we will reverse the conviction on Count Five and remand for a new trial.

## C. Possession of a Firearm in a School Zone.

Haywood was also convicted on Count Seven – possession of a firearm within 1000 feet of a school zone. That statute provides:

> It shall be unlawful for any individual knowingly to possess a firearm that has moved in or that otherwise affects interstate or foreign commerce at a place that the individual knows, or has reasonable cause to believe, is a school zone.

18 U.S.C. § 922(q)(2)(A). A "school means a school which provides elementary or secondary education, as determined under State law." 18 U.S.C. § 921(a)(26). "[S]chool zone" is defined to mean: "in, or on the grounds of, a public, parochial or private school" or "within a distance of 1,000 feet from the grounds of a public, parochial or private school." 18 U.S.C. § 921(a)(25)(A), (B).

8

Haywood argues that the government failed to prove that he knew or had reason to believe that he possessed a firearm in a school zone as required under the statute. We agree.

As noted earlier, Detective Tyson testified that he measured the distance from America's Bar and Poolroom to the Ulla Muller Elementary School to be 421 feet, 4 inches. Tyson also testified that the measurement was taken from the bar to the school's entrance gate. However, the location of the bar in relation to the school is not clear from the evidence. There is nothing to show whether they share the same frontage or are around the corner from each other or whether all approaches to the "school zone" are clearly marked. Therefore, the evidence did not establish whether Haywood necessarily would have seen the school on the way to or from the bar. Tyson testified on cross-examination as follows:

> Q: The device you used to measure the distance to the school, is that a line of sight device measurement?
>
> A: No. The measurement, I explained it already,[6] the

---

[6]On direct examination, Officer Tyson testified that he used measuring equipment known as a "Monson Company, Model 1212," and said "[i]t's like a long piece of stick with a wheel attached to the end that the traffic officers use when they're taking measurements in traffic accidents." App. at 303-304.

measurements were taken, the wheel that is attached, affixed to the stick, there's a little box in the top, and as you push the wheel it rolls the numbers around. So it gives you, as the wheel is rolling, it measures the distance as it goes from one point to the other.

> Q: Okay. So, to take the measurement, did you *walk around, from America's Bar around the corner all the way round to Ulla Muller School*?
>
> A: It was measured from the building into the entrance of the school, just within the gates.
>
> THE COURT: Is that line of sight? Can you see straight?
>
> THE WITNESS: Yes, you can. You can.
>
> BY [Defense Counsel]:
>
> Q: *So you went in a straight line*. Was that on a road or did you have to go through bush?
>
> A: That would be on the road.

9

App. at 304-05 (emphasis added).

However, the government did not produce any evidence of any school zone signs or similar identification that would support the inference that Haywood should have known that a school was within 1000 feet of the bar. Nor did the government produce any evidence that Haywood had to pass by the school to get to or from the bar.

Indeed, the only evidence offered by the government in its attempt to prove that Haywood should have known that the school was within 1000 feet of the bar is the following excerpt from his cross-examination testimony:

Q: But you know where America's Bar is, right?

A: Yes, Sir.

Q: You know where it is?

A: Where it is?

Q: Yeah.

A: It's by, across the street from Nisky Center. It have a big sign saying America's Bar.

Q: And you know it well, right?

A: No. I don't live down on that side. I live in Tutu.

Q: You live in Tutu, but you know where America's Bar is, you said?

A: Yes, sir. St. Thomas is very small.

Q: And you know how to get to America's Bar?

A: Yes, sir.

Q: And you know how to get from America's Bar?

A: Yes, sir.

Q: You know where the Towers are?

A: Yes, sir.

Q: You know how to get there?

A: Yes, sir.

App. at 360-61. Based on this cross-examination testimony, the government contends that the "jury could have drawn the reasonable inference that, since [Haywood] knew the surrounding area of America's Bar he knew or should have known the Ulla Muller Elementary School was within 1000 feet of the bar." Government's Br. at 26. However, we think it shows the opposite. Haywood testified that he did not know the area well because he lived in a different part of St. Thomas, and the trial testimony

10

can not be fairly interpreted as establishing that he knew the area well; only that he knew how to get there. Consequently, only rank conjecture supports a conclusion that Haywood knew or should have known that the bar was within 1000 feet of the school. This is particularly true because the government never even tried to establish whether all approaches to the bar necessarily pass the school or whether the area is marked as a "school zone."

In truth, the only evidence that the government produced to support this conviction is that the school is, in fact, within 500 feet of the bar. However, that is not sufficiently conclusive to enable a reasonable juror to draw the inference that Haywood knew or should have known of that proximity. Accordingly, there is insufficient evidence to support the conviction on Count Seven. Therefore, we will vacate the conviction and remand with directions to enter a judgment of acquittal on that Count.

### D. Interference with Commerce by Robbery.

18 U.S.C. § 1951 (Count One) provides:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens

physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951. To sustain a conviction for interference with commerce by robbery under § 1951, the government must prove the element of interference with interstate or foreign commerce by robbery. *See Stirone v. United States*, 361 U.S. 212, 218 (1960). "The charge that interstate commerce is affected is critical since the Federal Government's jurisdiction of this crime rests only on that interference." *Id*. However, "[i]f the defendants' conduct produces any interference with or effect upon interstate commerce, whether slight, subtle or even potential, it is sufficient to uphold a prosecution under [§ 1951]." *Jund v. Town of Hempstead*, 941 F.2d 1271, 1285 (2d Cir. 1991). Moreover, "[a] jury may infer that interstate commerce was affected to some minimal degree from a showing that the business assets were depleted." *United States v. Zeigler*, 19 F.3d 486, 493 (10th Cir. 1994).

The district court's jury instruction on the interference with commerce by robbery charge provided that

> if the government proves beyond a reasonable doubt that this business purchased goods or services that came

11

from outside St. Thomas, Virgin Islands, and that, therefore, all or part of the personal property obtained from this business, because of the alleged robbery, came from outside St. Thomas, Virgin Islands, then you are instructed that you may find that the defendants obtained, delayed or affected commerce as this term is used in these instructions.

App. 499. Haywood argues that the government did not produce sufficient evidence to show that the bar purchased goods or services from outside the Virgin Islands

However, Detective Foy testified that America's Bar is a business established in the Virgin Islands and that some products sold at the bar, specifically, Heineken beer and Miller beer, come from the mainland United States. However, Haywood still contends that Detective Foy's testimony is not sufficient to show that the bar purchased Heineken and Miller beer that came from outside the Virgin Islands. The linchpin of Haywood's argument is his claim that Foy did not provide a foundation for his knowledge regarding the source of the Heineken and Miller beer sold at the bar. Therefore, the jury did not know if Foy's testimony about the Heineken and Miller beer was based on information Foy received from Santiago, the bar's owner, or if Foy had himself been to the bar at an earlier time and knew that the products came from the mainland, or if Foy just assumed that the products came from the mainland. Haywood contends that, at a minimum, there must be some independent evidence, such as a purchasing invoice or the testimony of Santiago as to where she purchased the Heineken and Miller beer in order to show interference with interstate commerce.

We disagree. In *United States v. Lake*, 150 F.3d 269 (3d Cir. 1999), a carjacking case, we held that a Virgin Islands' police officer's testimony was sufficient to establish that the car in question had been transported in interstate or foreign commerce. In *Lake*, the police officer, a life-long resident of the Virgin Islands, testified that "no motor vehicles are manufactured in the Virgin Islands and that all motor vehicles have to be shipped to the islands." *Id*. at 273. Lake argued on appeal that the police officer's testimony based on his long time residence was not sufficient to establish the required commerce element of the federal carjacking statute, and that there was no foundation for his testimony. However, we rejected that argument. We took judicial notice of the small size of the Virgin Islands, and held that a "police officer and lifelong resident of a place of this type has a

12

sufficient basis to testify as to whether any motor vehicle manufacturing facilities are located there." *Id.*

Here, Officer Foy testified that he was assigned to the Safe Streets Task Force and that he investigates violent federal crimes as a police officer in that Task Force. Officer Foy also testified that he was familiar with America's Bar. We believe that this record is sufficient to establish that Officer Foy would have known of any Heineken or Miller breweries in the Virgin Islands. Consequently, the evidence was sufficient to prove the Heineken and Miller beer sold at America's Bar came to the Virgin Islands from the mainland United States or otherwise traveled in interstate or foreign commerce. [7] Accordingly, we will affirm

---

[7]Haywood also argues that there is no evidence to support the exercise of federal jurisdiction over what is really a territorial crime. In support of that argument, he cites to *United States v. McGuire*, 178 F.3d 203 (3d Cir. 1999). There, McGuire was convicted of arson of property used in an activity affecting interstate commerce. McGuire put a pipe bomb in his mother's car that was used in a local catering business. The government attempted to establish the federal jurisdictional element by relying on a bottle of orange juice that was in the trunk of the car. However, we held that the bottle of orange juice was too inconsequential to support the exercise of federal jurisdiction. *Id*. at 210-212.

However, *McGuire* does not help

Haywood's conviction on Count One.

## E. Possession of a Firearm During a Crime of Violence.

In Count Two Haywood was convicted of possession of a firearm during a crime of violence. The relevant statute provides:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for

---

Haywood. The federal jurisdictional element in § 1951 is that interstate commerce is affected. *Stirone*, 361 U.S. at 218. Here, it is clear that interstate commerce was affected, however minimally, because the bar sold Heineken and Miller beer that came from outside the Virgin Islands. Moreover, the bar's assets were depleted because money was stolen during the robbery. That is far more consequential than one bottle of orange juice.

such crime of violence or drug trafficking crime be sentenced to a term of imprisonment of not less than 5 years.

. . .

18 U.S.C. § 924©)(1). He argues here that because his § 1951 interference with commerce by robbery conviction must be reversed, his § 924(c) possession of a firearm during a crime of violence must also be reversed. He reaches this conclusion because he claims that the interference with commerce by robbery conviction is the predicate offense for a conviction under § 924(c). However, this argument is without merit because he was properly convicted under § 1951. Moreover, a conviction under § 924(c) does not require a conviction on the crime of violence as a predicate offense. *United States v. Lake*, 150 F.3d at 275. A valid § 924(c) conviction "requires only that the defendant have committed a violent crime *for which he may be prosecuted* in federal court. It does not even require that the crime be charged; *a fortiori*, it does not require that he be convicted." *United States v. Smith*, 182 F.3d 452, 457 (6th Cir. 1999) (emphasis in original).

### F. Lost or Destroyed Evidence.

Haywood claims that the district court erred by not dismissing the superseding indictment against him because the government either lost or destroyed the clothing he was wearing on the night of the robbery.[8]

In *Trombetta v. California*, 467 U.S. 479, 488 (1984), the Court noted that "[w]hatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense." In order "[t]o meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489.

Haywood submits that the lost or destroyed clothing meets the standard for constitutional materiality because his case centered on identification. Thus, the color and type of clothing he wore at the time he was arrested was relevant to both the government and the defense as proof of identity. He claims that Charles's identification of him is based on a white T-shirt that Charles said he was wearing. Haywood alleges there was no overwhelming evidence that he was

---

[8]The government claims that it neither lost nor destroyed the clothing Haywood was wearing on the night of the robbery. It notes that Detective Monoson testified on cross-examination that the clothing had been left in a recently condemned police station and that he was unable to enter the building to search for the clothing because of the condemnation.

wearing a white T-shirt because Charles was the only person who testified that he was wearing a white T-shirt. Haywood claims that he was wearing different clothing. Moreover, he notes that neither Santiago nor Rodriquez testified that he was wearing a white T-shirt. Therefore, he submits that if he had been able to introduce the T-Shirt, it would have been of significant value in rebutting Charles's testimony.[9] Consequently, he argues the unavailability of the clothing severely prejudiced his ability to mount a defense.

We do not see any merit in this argument. Haywood understandably forgets that he was photographed by the police wearing a white T-shirt during

---

[9]Haywood suggests bad faith on the government's part because the police did not follow standard procedure in preserving the clothing he wore. However, he does not say what standard procedure the police did not follow. In *United States v. Deaner*, 1 F.3d 192 (3d Cir. 1993), we wrote: "A defendant who claims destroyed evidence might have proved exculpatory if it could have been subjected to tests has to show the prosecution's bad faith in ordering or permitting its destruction. Without a showing of bad faith, failure to preserve evidence that might be of use to a criminal defendant after testing is not a denial of due process." *Id.* at 200 (citations omitted). Here, there is absolutely no evidence that Haywood's clothing was purposefully lost or destroyed.

processing following his arrest. That photograph was admitted as an exhibit at trial, but Haywood does not bother to mention it now. He also does not argue that the admission of the photograph was error. We fail to understand why it makes a difference whether the actual white T-shirt was introduced into evidence or whether a photograph of Haywood wearing the white T-shirt was introduced into evidence. Consequently, we hold that the district court did not err by not dismissing the superseding indictment against him based on this due process claim.

## G. Problems with the Interpreter.

Haywood's challenge to the translation of testimony is equally frivolous. At trial, both Santiago and Rodriquez testified with the aid of a Spanish interpreter. Haywood argues that his convictions must be reversed because of a number of problems with the interpreter, which he claims violated his Fifth Amendment due process right and his Sixth Amendment confrontation right. He first argues that there is no evidence in the record that the interpreter was certified to translate in federal court, as required by 28 U.S.C. § 1827, or otherwise determined to be qualified or competent under 28 U.S.C. § 1827(d). However, Haywood did not object to the district court's decision to use the interpreter nor did he raise any issue concerning the interpreter's certification or qualifications in the district court. Accordingly, he has waived this issue. *United States v. Hsu*, 155 F.3d 189, 205

(3d Cir. 1998) (citing *Harris v. City of Philadelphia*, 35 F.3d 840, 845 (3d Cir. 1994)).

Haywood's second argument is that the interpreter improperly summarized the testimony of Santiago and Rodriquez. However, he fails to tell us what testimony the interpreter summarized or why the alleged summary was improper.

His third argument is only slightly less fanciful than the prior two. He claims that the interpreter consistently translated testimony in the third person. According to Haywood, translation in the third person resulted in confusion because the translator's use of the pronouns "she" and "her" referred not only to Santiago and Rodriquez, but also to other female witnesses. In support of his argument he cites to *United States v. Gomez*, 908 F.2d 809 (11th Cir. 1990). In *Gomez*, the interpreter improperly equated "disco" with "Elks Lodge," thereby corroborating a prior witness's testimony that was favorable to the government. Here, however, there is no claim that the interpretation in the third person corroborated any other testimony, and Haywood fails to provide any concrete examples of confusion. Therefore, *Gomez* does not help. Accordingly, we do not find any due process violation involving the use of the interpreter.

### III. CONCLUSION

For all of the above reasons, we will affirm the convictions on Counts One, Two and Four; vacate the conviction on Count Five and remand for a new trial; and vacate the conviction on Count Seven and remand with directions to enter a judgment of acquittal.

_____

16