

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-17-2007

# USA v. David

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5500

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. David" (2007). *2007 Decisions.* Paper 1278.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1278

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 05-5500

UNITED STATES OF AMERICA, Appellee

v.

TYSAAN DAVID, Appellant

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal No. 04-CR-138)
District Judge: The Honorable Jerome B. Simandle
_____

Submitted Under Third Circuit LAR 34.1(a)
November 28, 2006

Before: FUENTES and GARTH, Circuit Judges, and POLLAK,* District Judge.

(Filed April 17, 2007)

_____

OPINION

_____

POLLAK, District Judge:

In a jury trial in the United States District Court for New Jersey, appellant Tysaan

David was found guilty of possessing a firearm while being a convicted felon, in violation

_____

* Honorable Louis H. Pollak, Senior District Judge for the United States District
Court for the Eastern District of Pennsylvania, sitting by designation.

1

of 18 U.S.C. § 922(g)(1). David now appeals from the denial of his post-trial motions for a judgment of acquittal and for a new trial. The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction over this timely appeal under 28 U.S.C. § 1291. Because the evidence at trial was sufficient to permit a rational finding of guilt beyond a reasonable doubt, and because the District Court did not abuse its discretion in refusing to grant a new trial, we will affirm appellant's conviction.

## I. Background

Although we write primarily for the parties, who are familiar with the facts and procedural history of the case, we address these matters in some detail due to the fact-intensive nature of David's claims.

### A. Procedural history

On March 2, 2004, a federal grand jury sitting in Camden, New Jersey indicted Tysaan David on a single count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).[1] On May 5, 2005, after an evidentiary hearing, the District Court denied appellant's motion to suppress certain statements.[2] Jury selection took place on July 11, 2005; the taking of testimony began on the 12th and was completed on the 13th,

---

[1] The single-count indictment also referenced 18 U.S.C. § 2, which concerns, *inter alia*, "aiding and abetting" an offense against the United States. At trial, at the close of the government's case, the District Court found that no evidence of "aiding or abetting" had been presented and struck the reference to § 2. The charge was submitted to the jury on the basis of § 922(g)(1) only.

[2] David does not challenge the denial of his motion to suppress on this appeal.

together with closing arguments and the jury charge; the jury's deliberations began in the late afternoon of the 13th, and on the morning of the 15th the jury returned a verdict of guilty. On July 20, David moved to set aside the verdict under Rules 29 and 33 of the Federal Rules of Criminal Procedure, requesting that the District Court enter a judgment of acquittal as a matter of law, or, in the alternative, grant a new trial. On December 16, 2005, the District Court heard argument and issued an oral decision denying relief under both Rule 29 and Rule 33. On the same day, David was sentenced to ninety-two months imprisonment. Five days later, David filed his timely notice of appeal.

## B. The evidence at trial

Evidence of the following was presented at trial:

While on patrol in a marked police car on the evening of October 22, 2003, Officers Gabriel Mateo and Lawrence Norman[3] of the Camden Police Department observed appellant David standing on a Camden street corner dressed in a black coat and gray sweat pants. According to the officers, David was alone, and, as they approached the corner, he threw down his coat and fled into an alley. Finding this suspicious, the officers parked their patrol car, and Officer Norman gave chase on foot, while Officer Mateo stopped to retrieve the coat. As Officer Mateo lifted the coat, a loaded gun—later determined to be a Lorcin model L380 semiautomatic pistol with an obliterated serial number—fell out of the coat's right sleeve. Meanwhile, Officer Norman pursued David

---

[3] By the time of trial, Officer Norman had been promoted to Detective. However, for the sake of clarity, we will refer to him throughout as "Officer Norman."

and took him into custody.

At trial, both officers identified David based on their observation of him as they approached the street corner and when David was apprehended. Officer Norman testified that while he was putting appellant into the patrol car—and before any mention of the gun had been made in appellant's presence—David made an unprompted statement to the effect of "that's not my gun, that's my brother's gun." According to both officers, David also incorrectly identified himself as "Hassan David."[4] The officers further testified that the entire incident lasted less than five minutes. The prosecution also introduced physical evidence, including what were alleged to be the Lorcin pistol and the discarded black coat.

On cross examination and in closing argument, the defense attempted to undermine the credibility of the officers' testimony and the quality of the government's overall case. The defense pointed out that the prosecution did not introduce forensic evidence such as fingerprint or other trace evidence tying David to the gun. Defense counsel also aggressively challenged the officers' methods of investigation and the accuracy and credibility of their testimony. In particular, the defense succeeded in demonstrating that Officer Norman's trial testimony regarding his pursuit and apprehension of appellant was in several respects at variance with Officer Mateo's trial testimony and with Officer Norman's own earlier testimony at the suppression hearing.

---

[4] Testimony at trial showed that David has a brother named Hassan David, but no evidence introduced at trial suggested that the Lorcin pistol belonged to Hassan.

4

For example, at the suppression hearing, Officer Norman testified that David dropped his coat, ran to the mouth of a nearby alley, took three or four steps into the alley, and then turned around and walked back toward Officer Norman. At trial, however, Officer Norman stated that David ran into and all the way through the alley, but that he—Officer Norman—only entered the mouth of the alley, before stopping and circling around on the street, meeting appellant as he walked out of the opposite end of the alley.[5] Also, although Officer Norman claimed that appellant made a statement ("that's not my gun") while being arrested and that he (Norman) told Officer Mateo about this statement, Officer Mateo testified that he did not recall Officer Norman mentioning any statements by appellant, and the statement did not appear in the "major incident report" prepared by Officer Mateo.

The defense called several witnesses. One of the defense witnesses—Victor Hayes, a security guard and friend of appellant—testified that, rather than being alone that night, David had been standing on the corner smoking a cigar with Hayes, and, further, that, rather than dropping his coat and being chased, appellant had been summarily arrested by two uniformed officers as soon as they pulled up in their patrol car. In addition, the defense presented evidence—both testimonial and documentary—tending to

---

[5] Officer Norman agreed that his trial testimony was "radically different" from his account at the suppression hearing. However, he adopted the trial testimony as the correct version, claiming that his trial testimony served to clarify and correct inaccuracies in his prior account. Officer Norman attributed the increased accuracy of his trial testimony to the fact that he had prepared more thoroughly and to the use of a map as an illustrative aid during his trial testimony.

5

counter the government's contentions with respect to the black coat David was allegedly wearing on the night in question. The government had introduced a size XXXL ("3XL") black coat allegedly thrown off by David before he fled. The defense sought to show that the 3XL coat was not the coat David was wearing on the evening he was arrested. The defense produced evidence showing that when the appellant was taken to the Camden County jail later that night—well after the time when the police claimed they had impounded the black 3XL coat—the jail's intake inventory recorded a black coat among the garments David was wearing when he was brought to the jail. Further, the defense presented evidence that the jail sent the inventoried belongings by mail directly to David's mother's address, and David's mother testified that when she received the package, she left it sealed until the defense's investigator could come to the house. The investigator then testified that, when the package from the jail was opened, it contained David's personal property, including a black coat, size XXL ("2XL"). The second coat, and also the box and packaging, were put in evidence by the defense.

In closing argument, in arguing that it had proved its case as to the disputed element of knowing possession, government counsel concentrated on issues of credibility. ("[T]he most important part of your job in this case . . . is to determine credibility.") The government presented reasons to believe the officers' testimony—emphasizing that the officers lacked a motive to lie and were consistent on the important details—while characterizing any inconsistencies as minor and expected.

In sharp contrast, defense counsel's closing argument asserted that the government

6

had presented a "crazy story," unworthy of credence. Agreeing with the government on one point—"It's all about credibility"—defense counsel argued that the officers, particularly Officer Norman, were untrustworthy, arrogant, slipshod in their work, and possibly biased. Further, defense counsel argued that the "grave" inconsistencies in police testimony should lead the jury to discredit the testimony in its entirety. Finally, defense counsel argued that the defense witnesses were highly credible, and that the second black coat (the 2XL coat) was (a) genuine and (b) inconsistent with the government's account of the first coat.

The jury deliberated for approximately six hours, spread over three days. At one point, the jury asked to have the testimony of the two officers read back. In response, the court, without objection from the parties, instructed the members of the jury to rely on their collective memory, and added that, if they had a question about a particular part of the testimony, they could request a read-back of that part. Thereafter, without further requests, the jury returned its guilty verdict.

## II. Issues on appeal

To prove the crime of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1)–(2), the government was required to prove beyond a reasonable doubt: "(1) that [the defendant] had previously been convicted of a crime punishable by imprisonment for a term exceeding one year; (2) that [the defendant] knowingly possessed a firearm; and (3) that the firearm had passed in interstate commerce." *United States v. Dodd*, 225 F.3d 340, 344 (3d Cir. 2000). In addition, to meet the statutory

definition, the "firearm" must be operable or readily converted to an operable state. *See* 18 U.S.C. § 921(3). At trial, David stipulated to the required prior criminal record and to the fact that the gun in question was a firearm under the statutory definition. Moreover, his attorney conceded in closing argument that the government's uncontroverted expert testimony established that the firearm had traveled in interstate commerce—David disputed only the element of knowing possession.

Invoking Rule 29, David now argues that the District Court erred in finding that the verdict was supported by evidence sufficient to permit a rational trier of fact to find beyond a reasonable doubt that he knowingly possessed a firearm. In the alternative, he urges, pursuant to Rule 33, that, even if the evidence was technically sufficient, the District Court abused its discretion by refusing to grant a new trial on the ground that the verdict was contrary to the weight of the evidence.

### III. Sufficiency of the evidence

When a district court denies a Rule 29 motion after conviction, our review of the sufficiency of the evidence is plenary. *See United States v. Coleman*, 811 F.2d 804, 807 (3d Cir. 1987) ("Our standard of review . . . is the same as that applied by the trial court."). However, the "burden on a defendant who raises a challenge to the sufficiency of the evidence is extremely high." *United States v. Serafini*, 233 F.3d 758, 770 (3d Cir. 2000). We "consider the evidence in the light most favorable to the government and affirm the judgment if there is substantial evidence from which a rational trier of fact could find guilt beyond a reasonable doubt." *United States v. Haywood*, 363 F.3d 200,

8

204 n.3 (3d Cir. 2004) (internal quotation marks omitted).

Applying this standard to the record before us, we reject appellant's contention that the District Court erred in denying his Rule 29 motion. In support of his challenge to the sufficiency of the evidence, appellant recites that the government's case lacked "any evidence as to David's actual possession of the firearm." (Appellant's Br. at 14.) His argument in support of this point, however, does not concern a *lack* of evidence; rather, he raises a challenge to the *credibility* of the evidence by pointing to a "litany of inconsistencies" in the officers' testimony and to his own presentation of evidence further undermining the government's witnesses. These are classic issues of witness credibility which are strictly within the province of the jury. The jury, or judge sitting as finder of fact, has authority to credit all, none, or any part of the evidence properly before it. *See, e.g.*, *United States v. Boone*, 279 F.3d 163, 189 (3d Cir. 2002). The members of the jury were entitled to credit the central facts of the officers' testimony concerning knowing possession, even if they discredited the other, inconsistent testimony. And they were entitled to completely discredit the defense's evidence.

Resolving these credibility issues in favor of the government, as we must, we are satisfied that there was substantial evidence from which the jury could have found that David knowingly possessed the Lorcin pistol. Both officers identified appellant as the man they saw standing on a street corner on October 22, 2003; they both stated that they had a clear look at his face before he ran, as well as after he was apprehended. Officer Norman testified that, while chasing appellant, he lost sight of him for less than half a

9

minute, and that, when he again caught sight of appellant and detained him, he recognized him as the man who had run from the street corner. Officer Mateo stated that when he lifted the jacket which he had just seen David discard, the Lorcin pistol fell out of the right sleeve. And the gun and the 3XL jacket were placed in evidence.

Based on this evidence, the jury reasonably could have concluded beyond a reasonable doubt that David possessed the gun in the sleeve of his jacket and that he knew the gun was there. The other required findings were stipulated to or conceded by the defense. Therefore, because the evidence, viewed in the light most favorable to the government, was sufficient to support the verdict, the District Court did not err in denying David's motion for a judgment of acquittal.

## IV. Weight of the evidence

"Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion [for a new trial on the ground that the verdict was contrary to the weight of the evidence] it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002). In the Third Circuit, "a district court 'can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted.'" *United States v. Davis*, 397 F.3d 173, 181 (3d Cir. 2005) (quoting *Johnson*, 302 F.3d at 150). Also unlike our review of denial of Rule 29 motions for acquittal, which is plenary, we "review a district

10

court's denial of a motion for a new trial pursuant to Rule 33 for abuse of discretion." *United States v. Jasin*, 280 F.3d 355, 360 (3d Cir. 2002).

Thus our review in the Rule 33 context is in some ways less constrained than under Rule 29. However, although we may examine the credibility of the evidence in considering this claim, we do so not in plenary fashion, but with a view to deciding whether the district court abused its discretion in declining to find—upon its own independent examination—that the evidence weighed so heavily against the verdict as to create "'a serious danger that a miscarriage of justice has occurred.'" *Davis*, 397 F.3d at 181 (quoting *Johnson*, 302 F.3d at 150). "An abuse of discretion involves a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *Valenti v. Mitchell*, 962 F.2d 288, 299 (3d Cir. 1992) (internal quotation marks omitted).

Applying the Rule 33 standard to this record, we find David's challenge to the District Court's denial of his new-trial motion unavailing. After hearing argument on the Rule 33 motion, the court issued an oral decision in which it first identified and discussed the proper legal standard and then carefully reviewed the evidence. The court found that the evidence showed the following: that David was convincingly identified; that both officers saw his face and saw him discard his jacket; that he was out of the sight of the officers for just a few seconds before being taken into custody; that "regardless of the inconsistency of exactly which way the defendant ran . . . the fact is that within seconds he was apprehended, he was arrested, and then within minutes placed within a police

11

car"; and that the officers' memories were firm as to the core details of the encounter. The court also noted (in its discussion of the Rule 29 motion) that the recovered coat was "significantly larger" than the alleged second coat, and that they thus could have been worn together.

Moreover, the District Court concluded that the jury had an opportunity to measure any inconsistencies or conflicting evidence against the "other areas of the evidence [pointing] squarely at the defendant's guilt," and that such inconsistencies were not so overwhelming as to indicate a risk that the conviction was unjust and merit the court's intrusion on the jury's function of determining credibility.[6] Going beyond the necessary findings, the District Court concluded not only that the jury verdict did not disregard the clear weight of the evidence, but "that [the jury] struck the correct balance in finding the defendant guilty beyond a reasonable doubt." In sum, the District Court concluded that this was not one of the "'exceptional cases,'" *United States v. Brennan*, 326 F.3d 176, 189 (3d Cir. 2003) (quoting *Virgin Islands v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987)), where a new trial was required in the interests of justice. The District Court, like the jury,

---

[6] *See, e.g.*, *United States v. Robinson*, 430 F.3d 537, 543 (2d Cir. 2005) (finding that, even in the context of a new trial motion, "the court may not wholly usurp the jury's role. It is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment" (internal quotation marks omitted)); *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989) (stating that, "[i]n general, conflicting testimony or a question as to the credibility of a witness are not sufficient grounds for granting a new trial" and that only "[w]here a witness' testimony is such that reasonable men could not have believed [it]" may the District Court "take the testimony away from the jury").

12

had the opportunity to observe the witnesses and evidence first hand. The District Court noted its duty to independently weigh the evidence, and it then reviewed the evidence carefully and provided cogent reasons for its belief in the "fairness and correctness" of the conviction. Its description of the evidence is well supported by our independent review of the record. Therefore, because our review of the record and the evidence shows that the District Court identified the correct legal standard, that it did not clearly err in any determination of fact, and that it properly applied the law to the facts, we cannot say that the District Court abused its discretion in denying David's motion for a new trial.

## V. Conclusion

Because the evidence presented at David's trial was sufficient to support his conviction, and because the District Court did not abuse its discretion in denying David a new trial, we will affirm.