**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1497
_____

UNITED STATES OF AMERICA

v.

EDWARD BURGESS,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 2:20-cr-00072-001)
District Judge:  Honorable R. Barclay Surrick
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 14, 2025
_____

Before:  SHWARTZ, KRAUSE, and CHUNG, <u>Circuit Judges</u>

(Filed: March 31, 2025)
_____

OPINION[*]
_____

CHUNG, <u>Circuit Judge</u>.

Edward Burgess was convicted of violating 18 U.S.C. § 922(g)(1) by possessing a

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

firearm as a convicted felon.  On appeal, he challenges the District Court's denial of his motions to suppress the evidence of the firearm and dismiss the indictment against him. Because the District Court properly denied both motions, we will affirm.

I.    BACKGROUND[1]

In the spring of 2019, the Pennsylvania State Police Bureau of Liquor Control Enforcement began investigating the Glass Door Lounge (the Lounge) for selling liquor and tobacco without a license.  Officer Chandrea Pigatt led the investigation.  She surveilled the Lounge in person and researched it on social media.  Through her social media search, she learned that Edward Burgess identified himself as one of the co-owners of the Lounge.  On June 1, 2019, Officer Pigatt and two other officers, Officer Samira Strand and Officer Jena Finney, patronized the Lounge while undercover.  While there, the undercover officers ordered alcoholic drinks and made observations of the Lounge's operations.[2]  After the visit, Officer Pigatt sent a certification request to the Pennsylvania Liquor Control Board to determine whether the Lounge had a valid liquor license.  The Liquor Control Board confirmed that the Lounge did not have a license.

Just over two weeks later, the same undercover officers returned to the Lounge. This time, they were accompanied by approximately 20 uniformed officers waiting outside the Lounge to conduct a raid.  While in the Lounge, the undercover officers again

---

[1]    Because we write for the parties, we recite only facts pertinent to our decision.

[2]    Undercover officers investigating unlicensed establishments are permitted to consume alcohol while working in order to preserve their safety and undercover status.

ordered alcoholic drinks. The officers witnessed Burgess acting as a manager of the Lounge. Specifically, they observed him walking in and out of staff doors and assisting staff at the bar. However, they never saw him personally serve or otherwise handle alcohol or tobacco. While the undercover officers were in the Lounge, Officer Pigatt sent text messages to the uniformed officers outside describing the number of people inside the Lounge and descriptions of suspects. Officer Pigatt testified that she described Burgess in these text messages, and Officer Finney, who was also on the text thread, confirmed that Officer Pigatt provided a description of Burgess to the uniformed officers outside.

Later that night, Officer Pigatt signaled for the raid team to enter the Lounge. The team entered and began securing suspects, including Burgess. Two uniformed officers approached Burgess and took each of his arms. He resisted, reached into his waistband, took out a firearm, and tossed it behind him. Burgess was then arrested and charged with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).

Burgess moved to suppress the evidence of the firearm, arguing the police lacked probable cause to arrest him and reasonable suspicion to seize him. The District Court denied the motion. Burgess then moved to dismiss the indictment due to spoliation of evidence based on the officers' failure to preserve the text messages between the undercover officers and raid team on the night of the raid. The District Court again denied the motion. After a jury trial, Burgess was convicted of violating 18 U.S.C. § 922(g)(1).

Burgess timely appealed.

3

II.    DISCUSSION[3]

   A.    Motion to Suppress

Burgess first challenges the District Court's denial of his motion to suppress. The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. Amend. IV. When an officer stops an individual for investigatory purposes, such a stop must be supported by reasonable suspicion. Illinois v. Wardlow, 528 U.S. 119, 123 (2000). Reasonable suspicion "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." Id. It does, however, "require[] at least a minimal level of objective justification." Id. If reasonable suspicion is lacking, "evidence gathered as a result of an unlawful search or seizure must be suppressed at trial." United States v. Coggins, 986 F.2d 651, 653 (3d Cir. 1993). The same is true of evidence that is abandoned "when the abandonment of [that] property is precipitated by an unlawful seizure." Id.

Here, two of the undercover officers testified that they witnessed Burgess acting as a manager or owner of the Lounge. Additionally, one of the officers testified that social

---

[3]    The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's underlying factual findings for clear error and exercise plenary review of the District Court's application of the law to those facts when reviewing motions to suppress and dismiss. United States v. Perez, 280 F.3d 318, 336 (3d Cir. 2002); United States v. Menendez, 831 F.3d 155, 164 (3d Cir. 2016). "Under the clear error standard, reversal of the District Court's factual findings is warranted only when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Menendez, 831 F.3d at 164 (internal quotation marks omitted). Accordingly, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, we will not reverse it even if, as the trier of fact, we would have weighed the evidence differently." Id. (internal quotation marks omitted).

media posts similarly indicated that Burgess was a co-owner of the establishment. The District Court credited the officers' testimony, found that the officers were conducting an investigative seizure of Burgess, and concluded that Burgess's actions and the background evidence established they had reasonable suspicion to seize him. We see no clear error in the District Court's findings related to credibility and the facts leading up to the seizure and agree with its conclusion that the officers had reasonable suspicion to conduct an investigatory seizure of Burgess. See United States v. Kole, 164 F.3d 164, 177 (3d Cir. 1998); United States v. Marcavage, 609 F.3d 264, 281 (3d Cir. 2010).

Burgess does not challenge the District Court's characterization of the officers' actions as an investigative seizure, but argues that the undercover officers lacked reasonable suspicion because they never witnessed him serve or handle tobacco or alcohol, or partake in other illegal activity inside the Lounge. This argument fails because Burgess's actions as a manager and owner of an establishment serving and handling alcohol without a license were sufficient to establish reasonable suspicion that he was violating Pennsylvania law. See 47 Pa. Stat. § 4-491(1) (stating that it is illegal "[f]or any person, by himself or by an employe or agent, … to sell or offer to sell any liquor" without a license, either "directly or indirectly"); Wardlow, 528 U.S. at 123.[4] Thus, the District Court properly denied the motion to suppress.

---

[4] Burgess was seized by members of the raid team, not the undercover officers, but that does not alter our conclusion. Officer Pigatt texted the raid team and identified Burgess as a suspect. Under the collective knowledge doctrine, her knowledge "is imputed to the officer who actually conducted the seizure." United States v. Whitfield, 634 F.3d 741, 745 (3d Cir. 2010); see Rogers v. Powell, 120 F.3d 446, 453 (3d Cir. 1997).

B.  Spoliation of Evidence

Burgess next challenges the District Court's denial of his motion to dismiss the indictment due to spoliation of evidence.  As we explained in United States v. Haywood:

> "[w]hatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense."  In order "[t]o meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."

363 F.3d 200, 212 (3d Cir. 2004) (alterations in original) (quoting California v. Trombetta, 467 U.S. 479, 488-89 (1984)).  Additionally, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."  Arizona v. Youngblood, 488 U.S. 51, 58 (1988); see Lambert v. Blackwell, 387 F.3d 210, 267 (3d Cir. 2004).

Officer Pigatt testified that her text messages merely contained physical descriptions of Burgess and others who should be arrested by the raid team and an approximate number of people in the Lounge.  The District Court credited this testimony and held that the text messages did not have apparent exculpatory value when they were deleted.  Crediting this testimony was not clearly erroneous, see Kole, 164 F.3d at 177, and the District Court correctly held that the text messages did not have apparent exculpatory value because a mere physical description that matched Burgess would not be the type of evidence that "might be expected to play a significant role in [his] defense," Haywood, 363 F.3d at 212 (quoting Trombetta, 467 U.S. at 488).

6

The District Court also denied Burgess's motion to dismiss because Burgess failed to show that the messages were deleted in bad faith. Burgess points to no specific evidence of bad faith. Instead, he claims that bad faith is the only possible explanation for the deletion of the messages. Certain officers provided an alternative explanation, however, and testified that they deleted the messages because, if the messages were seen by an employee of the Lounge, the employee could infer that they were undercover officers, thus risking their safety.[5] The District Court credited this testimony, and found that Burgess did not establish bad faith. This finding was not clearly erroneous as Burgess merely asks us to draw different inferences from the evidence. See Marcavage, 609 F.3d at 281. Accordingly, the District Court properly denied his motion to dismiss.

III.    CONCLUSION

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[5]    Burgess also argues that bad faith can be inferred from the fact that other officers deleted the texts. Even if these actions indicated bad faith, we would still affirm because the District Court did not clearly err in finding that the text messages were not exculpatory. See Haywood, 363 F.3d at 212 ("Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense." (cleaned up)).

7