

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-3-2008

# USA v. Abuarquob

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3123

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Abuarquob" (2008). *2008 Decisions.* Paper 417.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/417

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-3123

———

UNITED STATES OF AMERICA

v.

MAHMOUD ABUARQUOB,
also known as MAHAMOUD ABUARQOUB,
also known as MAHMOUD ARQOUB,
also known as MAHAMOUD A. ABU-ARQOUB,
also known as MAHAMOUD A. ARGOUB

Mahmoud Abuarquob,

Appellant

———

On Appeal from the United States District Court
for the District of New Jersey
(D. C. No. 05-cr-00573)
District Judge:  Hon. Freda Wolfson

———

Submitted under Third Circuit LAR 34.1(a)
on June 26, 2008

Before:  SLOVITER, BARRY and ROTH, Circuit Judges

(Opinion filed: October 3, 2008)

**ROTH**, <u>Circuit Judge</u>:

Mahmoud Abuarquob appeals the judgment of conviction and sentence entered by the District Court for the District of New Jersey relating to one count of mail fraud, in violation of 18 U.S.C. § 1341 (Count One), one count of introducing an unapproved new drug into interstate commerce while acting with intent to defraud, in violation of 21 U.S.C. §§ 331(d), 333(a)(2), and 355(a) (Count Two), one count of introducing a misbranded drug into interstate commerce while acting with intend to defraud, in violation of 21 U.S.C. §§ 331(a), 333(a)(2) (Count Three), one count of wholesale distribution of drugs without a license, in violation of 21 U.S.C. §§ 331(t), 333(b)(1)(D), and 353(e)(2)(A) (Count Four), and one count of knowing or fraudulent importation, in violation of 18 U.S.C. § 545 (Count Five). For the reasons stated below, we will affirm the judgment of the District Court.

## I. **Background**

On October 27, 2004, Abuarquob, representing himself as an agent of Safad Corporation, approached Shore Memorial Hospital and offered to sell it Aventis Vaxigrip flu vaccine. This flu vaccine was not approved for use in the United States by the Food and Drug Administration (FDA). Abuarquob told Barbara Giocomelli, the Pharmacy Director

at Shore Memorial, that given the current nationwide flu vaccine shortage, there was a lot of money to be made with these Vaxigrip flu vaccines. After Giocomelli informed Abuarquob that she did not believe Vaxigrip was approved for sale in the U. S., Abuarquob responded that the flu vaccine was in fact FDA-approved and was sold throughout New York. Abuarquob made similar assurances to others in his attempts to sell Vaxigrip.

Abuarquob was reported to the FDA by Giocomelli, who agreed to cooperate with the FDA in procuring evidence against Abuarquob. In a monitored telephone call, Giocomelli agreed to purchase 5,000 Vaxigrip flu vaccines for $55 per unit. Abuarquob then sent a fax, which represented that Vaxigrip was FDA-approved, to Giocomelli, confirming the transaction. In addition, Abuarquob requested that a "letter of commitment/purchase order" be addressed to Safad at an address which turned out to be Abuarquob's home. Abuarquob picked up the letter and told Giocomelli that the Vaxigrip vaccines would be delivered on November 8, 2004. On that date, Abuarquob called Giocomelli and told her that DHL, the carrier chosen by Abuarquob, had shipped the vaccines to the wrong location and that he was going to leave the country to get the vaccines himself.

On November 17, 2004, Customs and Border protection officers seized the DHL shipment of Vaxigrip, which had originated in Saudi Arabia. The officers disguised themselves as DHL employees and attempted a controlled delivery to Abuarquob's home, but no one was there. The officers left instructions on how to retrieve the package. They were called later that day by a woman, claiming to represent Safad. She scheduled a delivery

3

time. The officers made the delivery to this woman – who turned out to be Abuarquob's wife – and then executed a search warrant. Abuarquob's wife put the officers in contact with Abuarquob, who once again insisted that Vaxigrip was FDA-approved. Abuarquob was arrested on reentering the country at Philadelphia International Airport on December 4th.

A Grand Jury indicted Abuarquob on the five counts listed above, and his trial commenced on January 9, 2006. At the close of the government's case, Abuarquob filed two motions for acquittal pursuant to Federal Rule of Criminal Procedure 29. The first motion asserted that there was insufficient evidence to convict him on Count One because the government had proven that the vaccines were delivered by DHL rather then by "mail" as the indictment charged. Abuarquob argued that the word "mail" as found in 18 U.S.C. § 1341 refers exclusively to the province of the United States Postal Service, as opposed to a private commercial carrier like DHL. Thus, Abuarquob asserted that to convict him would represent an unconstitutional constructive amendment of his indictment. The District Judge reserved decision on the motion until after the jury's verdict, at which time she denied the motion in a written opinion.

The second motion asserted that there was insufficient evidence of fraudulent intent – a necessary element of Counts One, Two, Three, and Five – on the part of Abuarquob. The District Court denied this motion after argument.

The District Court had subject matter jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291.

4

## II. Discussion

On appeal, Abuarquob repeats his arguments detailed above.

In regard to Abuarquob's first claim, we exercise plenary review over issues of statutory interpretation. *Gibbs v. Cross*, 160 F.3d 962, 964 (3d Cir. 1998). Similarly, "[w]e exercise plenary review in determining whether there was a constructive amendment of the indictment and whether there was a variance between the indictment and the proofs at trial." *United States v. Dario*, 445 F.3d 253, 259 (3d Cir. 2006).

A constructive amendment occurs "where a defendant is deprived of his 'substantial right to be tried only on charges presented in an indictment returned by a grand jury.'" *United States v. Syme*, 276 F.3d 131, 148 (3d Cir. 2002) (quoting *United States v. Miller*, 471 U.S. 130, 140 (1985). "In order to rise to the level of an impermissible amendment, a variance must act to modify the indictment so that the defendant is convicted of a crime that involves elements distinct from those of the crimes with which he was originally charged." *United States v. Asher*, 854 F.2d 1483, 1497 (3d Cir. 1988). Here, however, even assuming that delivery by "mail" or "private carrier" were two distinct crimes as Abuarquob asserts,[1]

---

[1] Section 1341was expanded in 1994 when Congress amended it to broaden its language to include private or commercial carriers. As a result of that amendment, the plain text of § 1341 refers to the use of transmission facilities both in the context of the Postal Service and of private or commercial carriers. *See* 18 U.S.C. § 1341. In addition, this Court has previously stated that "[t]he substantive elements of mail fraud under § 1341 are . . . the use of the mails–whether the United States Postal Service or a private carrier–in furtherance of the fraudulent scheme," *Dobson*, 419 F.3d at 236-37, and that "[w]e use the term 'mail' and

5

they still share the same elements. *See United States v. Dobson*, 419 F.3d 231, 236-37 (3d Cir. 2005). Therefore, there has been no unconstitutional constructive amendment of Abuarquob's indictment.[2]

In regard to Abuarquob's second claim, our review of a challenge to the sufficiency of evidence is plenary, *United States v. Taftsiou*, 144 F.3d 287, 290 (3d Cir. 1998). "We must determine whether the evidence submitted at trial, when viewed in the light most favorable to the government, would allow a rational trier of fact to convict." *United States v. Hart*, 273 F.3d 363, 371 (3d Cir. 2001) (internal quotations omitted).

The facts contained in the record, viewed in the light most favorable to the government, lead us to the conclusion that there was more than sufficient evidence for a jury to find beyond a reasonable doubt that Abuarquob knew or was willfully blind to the fact that Vaxigrip was not FDA-approved. Abuarquob attained a printout from the FDA's website showing that another flu vaccine, Fluzone, was FDA-approved, evincing his awareness of the simple process of verifying a drug's status online. Still, Abuarquob repeatedly asserted – orally and in writing – that Vaxigrip was FDA-approved. He also acknowledged the nationwide flu vaccine shortage and potential profits to be reaped by sales of Vaxigrip. We

'mailing' to include any mode of delivery covered by the mail fraud statute." *United States v. Tiller*, 302 F.3d 98, 101 n.2 (3d Cir. 2002).

[2]There has also been no prejudicial variance because "the indictment sufficiently inform[ed] [Abuarquob] of the charges against him so that he [could] prepare his defense and not be misled or surprised at trial." *Dario*, 445 F.3d at 262. Indeed, while the indictment charged Abuarquob with delivery by mail, it also detailed the DHL shipment that was at the center of the government's case.

find that these facts could lead a reasonable jury to believe that Abuarquob knew or was willfully blind to the fact that Vaxigrip was not FDA-approved.[3]

## III.  **Conclusion**

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[3]Abuarquob argues that he relied on his supplier's assurance that Vaxigrip was FDA-approved, and that his transparent conduct–he openly gave out his name, address, and telephone number in his attempts to sell Vaxigrip–show that he did not have the requisite intent.  However, these facts are insufficient to overturn a well-reasoned jury verdict.