**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

15-4062
_____

UNITED STATES OF AMERICA

v.

MARCUS WALKER,
Appellant

_____

On Appeal from the District Court
for the Eastern District of Pennsylvania
(E.D. Pa. 2-13-cr-00391-002)
Honorable Legrome D. Davis, U.S. District Judge

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 23, 2018

Before: JORDAN, KRAUSE, and ROTH, *Circuit Judges*

(Opinion filed: June 5, 2019)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

KRAUSE, *Circuit Judge*.

Appellant Marcus Walker challenges his convictions for conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a), attempted Hobbs Act robbery in violation of 18 U.S.C. §§ 1951(a) and 2, and using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c) and 2. For the reasons stated below, we will affirm.

## I. Background

This case stems from a robbery in which Walker acted as the lookout. While Walker waited in a car, two of his accomplices robbed a house, one holding a boy at gunpoint. All of Walker's codefendants pleaded guilty to various counts, and Walker alone went to trial.

At trial, the Government presented testimony from three cooperators who were involved in or knew about the robbery and from Agent Patrick Henning, the lead investigator on the case. In addition to testifying about proffer sessions he had with two cooperating witnesses, Agent Henning spoke at length about cell phone records and cell site location information (CSLI) associated with cell phones from the investigation.[1]

With respect to the cell phone records, Agent Henning testified that an analyst extracted data from cell phones seized from two of the cooperators, which yielded contact lists, call records, and text messages. In addition, the Government obtained through

---

[1] CSLI identifies the cell towers to which a cell phone connects at certain times, thereby allowing the Government to determine the cell phone's approximate location at the time of connection. *See Carpenter v. United States*, 138 S. Ct. 2206, 2211–12 (2018).

subpoena "call detail records" from the phone companies for those same phones, which included "pages and pages of phone records that list, with timestamps, calls that are made in sequential order," as well as subscriber information. App. 686. From this information, Agent Henning and an analyst organized certain data into slides depicting phone contacts that the codefendants made to one another during the relevant time frame.

As for the CSLI, Agent Henning created a series of maps that identified "points of interest" in the case, such as the location of the robbery target and the latitude and longitude of the cell towers to which Walker's cell phone had connected at pertinent times over thirteen days and to which a codefendant's cell phone had connected at pertinent times over two days. When asked how CSLI worked, Agent Henning responded that he was not an expert in the technology but began to explain what he did know. Defense counsel objected on the ground that Agent Henning was not an expert witness. [2] After some back and forth at side bar, the parties agreed that "just transposing [onto a map] the latitude and longitude" of a cell phone tower to which a phone had connected—information provided by the phone companies—did not require expert analysis, and the Court allowed Agent Henning to proceed. App. 710–11. Agent Henning then explained how the CSLI placed Walker and an accomplice in locations that were consistent with other information about the robbery.

---

[2] Notably, defense counsel did not object when Agent Henning explained, only moments before, that "[t]his data is cell tower locations, it's where the phones that the men in this robbery were using, where these phones were communicating, which towers they were communicating with at certain parts—certain parts of certain days." App. 706.

The jury convicted Walker on all counts but, in connection with the Section 924(c) charge, found him guilty of only using and carrying a firearm, not brandishing it. The District Court sentenced him to 72 months' imprisonment on the robbery counts and a consecutive term of 60 months on the Section 924(c) count. This appeal followed.

## II.     Discussion[3]

On appeal, Walker argues that the District Court committed reversible error by: (1) admitting the CSLI into evidence in violation of *Carpenter v. United States*, 138 S. Ct. 2206 (2018); (2) allowing Agent Henning to testify about the phone records and CSLI and improperly "vouch" for the credibility of the cooperating witnesses in doing so; and (3) permitting Walker's Section 924(c) conviction to stand. Because Walker did not raise these objections before the District Court, we review only for plain error.[4] *See United States v. DeMuro*, 677 F.3d 550, 557 (3d Cir. 2012). We find none.

### A.     Admissibility of the CSLI

Walker first argues that, under *Carpenter v. United States*, the District Court plainly erred when it allowed the Government to introduce CSLI that it had obtained without a warrant in violation of his Fourth Amendment rights. Although it is true that

---

[3] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

[4] Plain error exists when "(1) an error was committed (2) that was plain, and (3) that affected the defendant's substantial rights." *United States v. Lopez*, 650 F.3d 952, 959 (3d Cir. 2011) (citation omitted). Even upon finding a plain error, an appellate court has discretion whether to grant relief but should correct the error if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 736 (1993) (citation omitted).

law enforcement must generally secure a search warrant based on probable cause to obtain CSLI, *see Carpenter*, 138 S. Ct. at 2221, Walker's argument is foreclosed by our recent decision in *United States v. Goldstein*, which held that the exclusionary rule does not apply where the government "had an objectively reasonable good faith belief that its conduct was legal when it acquired [the] CSLI." 914 F.3d 200, 202 (3d Cir. 2019). As in *Goldstein*, the agents here relied on a then-valid judicial order, a then-valid statute, and then-binding appellate authority. *Id.* at 204. The District Court, therefore, did not commit any error, much less plain error, by admitting the CSLI into evidence.

### B.  Agent Henning's Testimony

Walker next argues that the District Court committed plain error by permitting Agent Henning to testify about the phone records and CSLI because, Walker contends, Agent Henning's testimony was based on a report he did not create and therefore violated Walker's Confrontation Clause rights under the Sixth Amendment. Walker also argues that Agent Henning improperly vouched for the testimony of the cooperating witnesses. We reject both arguments.

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. It bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004).

4

As to Walker's Confrontation Clause argument, it is not clear that the District Court's decision to allow Agent Henning to testify about the phone records or CSLI was error at all. The record contains evidence that Agent Henning personally reviewed the data at issue, even though he worked "[i]n conjunction with an . . . analyst." App. 695; *see, e.g.*, *id.* at 708 ("Q: What did you do with the cell site data? A: I reviewed . . . the information from the phone companies[.] I was able to see cell site latitude and longitude locations, which I can just go right into a Google Maps, for example, put in those points and see where those towers were."). Thus, it appears that Agent Henning had an independent basis on which to testify about both the phone records and the CSLI.[5] *Cf. Bullcoming v. New Mexico*, 564 U.S. 647, 662 (2011) (finding relevant to its conclusion that a Confrontation Clause violation occurred that the State did not contend that the testifying analyst—who did not perform the lab test at issue—had an "independent opinion" concerning the test results (citation omitted)).

Moreover, even assuming there was an error, it was not plain. There is very little case law concerning the proper bounds of CSLI testimony (as compared to, for example, testimony about forensic laboratory results) and nothing to suggest one must be a "cell site information analyst" to take the stand. Appellant Br. 21. This is especially true where, as here, the parties agreed that the records themselves were admissible. Moreover, the Supreme Court's Confrontation Clause jurisprudence, even as to forensic

---

[5] *See* App. 774 ("THE COURT: This was done in your presence, right, the work of the analyst, lest suggesting that - - AGENT HENNING: Yes, this was a collaborative effort.").

testing, could benefit from further clarification. *See Stuart v. Alabama*, 139 S. Ct. 36, 36 (2018) (Gorsuch, J., dissenting from denial of writ of certiorari) (observing that "[t]his Court's most recent foray in [Confrontation Clause jurisprudence relating to forensic testing], *Williams v. Illinois*, 567 U.S. 50 (2012), yielded no majority and its various opinions have sown confusion in courts across the country.").

Finally, the error—if there was one—was harmless. *See United States v. Jimenez*, 513 F.3d 62, 78–79 (3d Cir. 2008). While Agent Henning's testimony was important to the Government's case, three cooperating witnesses testified that Walker participated in the robbery. In addition, as the Government notes, the defense engaged in a lengthy cross-examination of Agent Henning and did not challenge the accuracy of the data reflected on his slides or cite any discrepancies between the phone record exhibits and the underlying records. Thus, even though the phone records and CSLI were important corroborating evidence in this case, Walker cannot show prejudice, much less a miscarriage of justice on plain error review.

Walker's vouching argument also fails. "Vouching constitutes an assurance by the prosecuting attorney of the credibility of a Government witness through personal knowledge or by other information outside of the testimony before the jury." *United States v. Walker*, 155 F.3d 180, 184 (3d Cir. 1998). Although most often associated with prosecutors' remarks in argument, vouching can also occur during witness examination. *See United States v. Berrios*, 676 F.3d 118, 134 (3d Cir. 2012). Here, Agent Henning testified about his proffer sessions with the cooperators and the cell phone data that he analyzed. His comments that the phone records and CSLI were "consistent with [his]

6

investigation," *e.g.*, App. 724, were not based "on information outside of the record," *Berrios*, 676 F.3d at 134. To the contrary, Agent Henning testified about what he learned and how he learned it after the cooperators themselves had testified and been cross-examined about their versions of the events. While he acknowledged that the investigation did not utilize a wiretap or electronic surveillance, he explained that all records were obtained after-the-fact, and his analysis was based on them and his interviews with the cooperators. In short, Agent Henning spoke from personal knowledge and therefore was not vouching for the cooperating witnesses. *See United States v. Christie*, 624 F.3d 558, 569 (3d Cir. 2010) (holding that there was "no sensible vouching or bolstering challenge to be made" where the lead agent's challenged testimony was based on his personal knowledge of the case).

## C. Conviction Under Section 924(c)

Finally, Walker argues that his conviction for using and carrying a firearm in connection with a crime of violence must be vacated because conspiracy and attempt to commit Hobbs Act robbery do not qualify as crimes of violence under the "elements clause" of 18 U.S.C. § 924(c)(3).[6] In addition, Walker contends that the District Court committed plain error because it is not clear whether the attempt count or the conspiracy count was the predicate offense for his Section 924(c) conviction. Neither argument is persuasive.

---

[6] Walker also argues that the residual clause is void for vagueness. Because we conclude that Walker's Hobbs Act robbery is a crime of violence under the circumstances of this case, we need not address Walker's challenge to the residual clause.

7

Section 924(c) provides for a mandatory minimum consecutive sentence where a defendant uses or carries a firearm during and in relation to a predicate "crime of violence." 18 U.S.C. § 924(c)(1)(A). The statute defines a crime of violence in part as an offense that is a felony and "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *Id.* § 924(c)(3)(A). The Hobbs Act defines "robbery" as "the unlawful taking or obtaining of personal property . . . against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession." *Id.* § 1951(b)(1).

In *United States v. Robinson*, 844 F.3d 137, 143 (3d Cir. 2016), we held that a defendant's contemporaneous convictions for Hobbs Act robbery and brandishing a gun in furtherance of it "necessarily support the determination that the predicate offense was committed with the 'use, attempted use, or threatened use of physical force'" and, therefore, that the predicate offense constituted a crime of violence for purposes of Section 924(c). Given that Walker's convictions were contemporaneous, *Robinson* applies here.[7]

Walker's final argument about the alleged confusion regarding which count—conspiracy or attempt—served as the predicate offense for his Section 924(c) conviction is belied by the record. In charging the jury on the Section 924(c) count, the District

---

[7] Walker contends that it is unclear whether *Robinson* applies to non-brandishing cases, but that very lack of clarity would foreclose a finding of plain error. *See United States v. Dobson*, 419 F.3d 231, 239 (3d Cir. 2005) ("In order to be 'plain' an error must be 'clear' or 'obvious.'") (citation omitted).

Court told the jury that, in order to convict Walker on this count, it must find beyond a reasonable doubt "that the conspirator or the accomplice committed the crime of *attempted* interference with interstate commerce by robbery." App. 885 (emphasis added). Breaking the charge down further, the Court continued, "So you would have to find . . . that during and in relation to the commission of that *attempted* Hobbs Act robbery, the Defendant or one of his accomplices or conspirators knowingly used or carried a firearm." *Id.* (emphasis added). Because the Court clearly instructed the jury on the attempt count, we again find no error, plain or otherwise.

## III.   Conclusions

For the foregoing reasons, we will affirm the District Court's judgment and sentence.