[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 7, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-14529
Non-Argument Calendar

_____

D. C. Docket No. 06-00021-CR-3-LAC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ARNOLD SYLVESTER LINDSAY, JR.,
a.k.a. Sylvester Lindsay,
a.k.a. Poison,
a.k.a. Jeezy,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(August 7, 2007)

Before ANDERSON, BARKETT and MARCUS, Circuit Judges.

PER CURIAM:

Arnold Lindsay appeals his conviction for knowingly possessing a firearm that had an obliterated serial number, in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B), and the 420-month sentence he received after he pled guilty to four counts of being a felon in possession of a firearm or ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); two counts of delivering a firearm or ammunition to a juvenile, in violation of 18 U.S.C. §§ 922(x)(1) and 924(a)(6)(B); one count of possessing a firearm that had an obliterated serial number, in violation of 18 U.S.C. §§ 922(k) and 924 (a)(1)(B); and one count of discharging a firearm in a school zone, in violation of 18 U.S.C. §§ 922(q)(2) and (3) and 924(a)(1)(B) and (a)(4). On appeal, Lindsay raises three claims. First, he argues that there was no factual basis to support his guilty plea to possessing a firearm (a Lorcin .380 caliber semiautomatic handgun) that had an obliterated serial number, a violation of 18 U.S.C. § 922(k), because, at the plea colloquy, he denied knowing of the obliteration. Second, Lindsay claims that the district court erred at sentencing by providing an insufficient explanation to support a Guidelines-departure sentence, under U.S.S.G. § 4A1.3. Finally, he challenges the reasonableness of the district court's imposition of an upward variance from a Guidelines range of 168 to 210 months' imprisonment to a 420-month term of imprisonment. After thorough review of the record and careful consideration of the parties' briefs, we affirm.

2

I.

The facts relevant to our analysis are these. On February 23, 2006, Lindsay was indicted on four counts of being a felon in possession of a firearm or ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Counts 1-4); two counts of delivering a firearm or ammunition to a juvenile, in violation of 18 U.S.C. §§ 922(x)(1) and 924(a)(6)(B) (Counts 5 and 6); one count of possessing a firearm that had an obliterated serial number, in violation of 18 U.S.C. §§ 922(k) and 924 (a)(1)(B) (Count 7); and one count of discharging a firearm in a school zone, in violation of 18 U.S.C. §§ 922(q)(2) and (3) and 924(a)(1)(B) and (a)(4) (Count 8). The charges arose out of Lorcin's possession of ammunition for various types of guns, including a Remington 9mm, a Winchester .380 caliber, and a Lorcin .380 caliber, and possession of a Lorcin .380 caliber semiautomatic handgun. On the eve of trial, Lindsay pled guilty to the charges against him, without the benefit of a written plea agreement.

During the subsequent plea colloquy, the district court first confirmed that Lindsay: understood the plea proceedings; was not under the influence of drugs or alcohol; did not suffer from a mental or emotional illness; understood his constitutional rights associated with a trial by jury and his waiver of those rights; and understood his right to appeal his guilt and his waiver of that right. The court

3

then instructed Lindsay: "If I accept your plea, you must understand you won't be able to change your mind later and withdraw the plea. This is the time to make that decision, and it will be binding upon you. Do you understand that?" Lindsay indicated that he understood.

The government then made its factual proffer in support of the plea. As part of the proffer on Count 7 of the indictment, which charged that Lindsay possessed "a Lorcin .380 caliber . . ., knowing that the manufacturer's serial number had been removed and obliterated from the firearm," the government stated: "That handgun had an obliterated serial number. Each of the numbers on that handgun had been drilled out with a drill bit, . . . and the defendant did know the serial number on that firearm has been drilled out prior to his possession." The government also proffered that its evidence at trial would include: "a number of witnesses that would testify that the firearm was, in fact, the defendant's Lorcin .380 and that he had left it at Alex Burkholter's home to come and retrieve it on other occasions. We have other witnesses, Your Honor, that would testify to him being in possession of the firearm on various other instances and those could be provided as 404(b) notice to the defendant."

The government's proffer prompted the following exchange:

[Lindsay's Attorney]:    Judge, [Lindsay] was talking about that he didn't really know that the obliterated serial number was there, but I

4

explained to him that it could be a real knowledge that he knew or should have known that it was obliterated by close examination. That's the way I explained it to him. He said he really didn't–wasn't aware of the obliterated serial number at the time, that the gun was retrieved.

The Court:     But you do acknowledge that you were in possession of that gun?

Lindsay:     Yes, sir, I understand that, but I was just confused because, know what I'm saying. She got the people that's going to come and say they seen the gun, but just like them, I bet ain't nobody going to say they knew that that gun was like that. I couldn't even really see it. The police when they first took us to jail, they ain't even noticed it, you know. He brought it to my attention. He was like putting me in the car and we went around the corner–when he was around the corner, he was like, you know what I'm saying, and he's like saying upon close look, he was like–but that's probably their job to look for that. I wasn't even–it don't matter. I'm pleading.

The Court:     Other than that, are all the other facts correct?

Lindsay:     Yes, sir.

The Court:     Did you do what the government says that you did?

Lindsay:     Yes, sir. I'm plea[d]ing. I'm cop[p]ing out.

Lindsay then confirmed that he had discussed the Sentencing Guidelines with counsel and understood that neither his attorney nor the court knew what the final sentence would be, but that the Guidelines were only advisory so that the court could impose a sentence above or below the advisory range. Lindsay pled guilty to all eight counts of the indictment. The district court found that Lindsay was "alert

5

and intelligent," understood the nature of the charges against him, and appreciated the consequences of his guilty plea. The court further found that the government's factual proffer was sufficient to support the plea, and that Lindsay's plea was "freely and voluntarily and understandably made." The court accepted the guilty plea, and Lindsay proceeded to sentencing.

According to the presentence investigation report ("PSI"), the conduct leading to Count 7 of the indictment was the following. On September 9, 2005, law enforcement officers responded to a report of "shots fired" at the Woodham High School in Escambia County, Florida. Jamie Kennedy, who lodged the complaint, reported to the officers that she had seen three young black males run down the street being chased by a slimly built black male, and that she heard one shot fired. As part of the investigation, law enforcement interviewed numerous students at the school and Kinard Franklin, who stated that he and another individual accompanied Lindsay over to Woodham High School on the day of the shooting. Lindsay told Franklin that he was going to take care of someone who had gotten into an argument with "S.S." (a female juvenile, aged 15). Franklin said he did not know that Lindsay was armed until Lindsay pulled out a gun and started shooting at a group of males. Lindsay then ran after the males shooting at them. Franklin and the other individual who had accompanied Lindsay then got back into

the car and left the scene, returning later to pick up Lindsay. "E.T.B." (another female juvenile) reported to law enforcement that she had overheard Lindsay and "S.S." discussing the Woodham High School shooting. Lindsay admitted to "E.T.B." that he had fired a pistol at D.R." (a male juvenile) because D.R. had harassed S.S. earlier that day.

Two days later, on December 11, 2005, Lindsay was arrested at the home of Alex Burkholter, a male juvenile, aged 16, as he (Lindsay) tried to crawl out of the window of Burkholter's bedroom. After Lindsay was arrested, Burkholter directed law enforcement officials to a shoebox that contained a gun which had been painted black and had an obliterated serial number. According to the arresting officer who found the gun, a Lorcin .380 caliber semi-automatic pistol, the gun still smelled of fresh paint. The PSI stated: "The serial number on the firearm had been removed. It was noted there were five individual depressions (appear to be drill marks) on both sides of the handgun where a serial number would normally be located. The fact that the gun had recently been painted proves that Lindsay knew about the serial number seeing as he would have had to observe[ ] the drilled out nature of the numbers in order to paint the gun."[1]

---

[1]The PSI also indicated that Lindsay engaged in the following conduct. On August 29, 2005, Lindsay came uninvited to a birthday party and pointed a gun between S.M.'s (a female juvenile, aged 16) eyes at a very close distance. On September 1, 2005, after Lindsay had an oral dispute with Sasha Calbert, with whom he shares a child, and her brother, Quantas Culbert, Lindsay

The PSI assigned a base offense level of 20, pursuant to U.S.S.G. § 2K2.1(a)(4)(A), and recommended the following adjustments: (1) a 2-level increase, pursuant to U.S.S.G. § 2K2.1(b)(4), because of the involvement of a firearm with an obliterated serial number; (2) a 4-level increase, pursuant to U.S.S.G. § 2K2.1(b)(5), because Lindsay used or possessed a firearm in connection with another felony offense; (3) a 2-level increase, pursuant to U.S.S.G. § 3B1.4, for using or attempting to use a person less than 18 years old to commit the offense or avoid detection of the offense; and (4) a 2-level increase, under U.S.S.G. § 3c1.1, for willfully obstructing or impeding justice. Lindsay's adjusted offense level was 30.

Lindsay was also given 25 criminal history points for his prior criminal convictions, which included convictions for (1) battery on a school board member, (2) trespass (three times), (3) reckless driving, (4) driving without a valid driver's license, (5) resisting arrest without violence (three times), (6) indecent exposure, (7) battery on a detention staff member, (8) giving a false name to a law enforcement officer, (9) possession of a controlled substance (twice), (10)

---

fired shots at Quantas as he drove by Lindsay. On September 16, 2005, Edwin Gibbons was having a birthday party for his daughter. Gibbons heard squealing tires in front of his house and went outside and asked Lindsay, who had not been invited to the party, to leave. Lindsay then pulled a handgun from his pants, "circled the action," and pointed it towards Gibbons, saying, "I'll do as I want to. I'm 23 years old, and I'll cap you."

possession of drug paraphernalia, (11) driving with a suspended license, and (12) assault. Lindsay received two additional criminal history points, pursuant to U.S.S.G. § 4A1.1(e), because he committed the instant offenses less than two years after he was released from custody. With 27 criminal history points, Lindsay was assigned a criminal history category VI. The advisory Guidelines imprisonment range he faced was 168 to 210 months. The PSI recommended that the district court apply an upward variance from the Guidelines range and sentence Lindsay to 420 months' imprisonment based on the factors in 18 U.S.C. § 3553(a).

Lindsay filed objections to the PSI, challenging, inter alia, the increase to his offense level for possessing a firearm with an obliterated serial number. He asserted that he did not know about the obliteration, and that his "guilty plea to [knowingly possessing a firearm with an obliterated serial number] would seem to be questionable as to a factual basis at this juncture."

At the sentencing hearing, Ronald Williams, a special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, testified about the activities reported in the PSI. He described his recovery of the Lorcin .380 pistol Burkholter's house. When he found the gun, Special Agent Williams noted that the gun had been freshly painted as it had "the odor of fresh paint." The government also presented the testimony of Burkholter, who identified the Lorcin

9

pistol and stated that he had not handled the handgun found in his room, but that Lindsay had come to his house on several occasions and taken the gun, which Lindsay stored at Burkholter's house for a period of two or three months. Officer James Moretz, of the Escambia County Sheriff's office, also was present at Burkholter's house when Lindsay was arrested and the Lorcin pistol was found. Officer Moretz testified that upon recovering the firearm when Lindsay was arrested, he immediately noticed that there were drill marks on both sides of the handgun where the serial number would normally be, and that the pistol had been "handpainted, sort of rough."

After the government's presentation of evidence, Lindsay renewed his objection to the enhancement to his offense level for the involvement of a firearm with an obliterated serial number. The district court examined the Lorcin .380, which was marked as "Exhibit 3," and overruled Lindsay's objection, stating: "Exhibit 3 demonstrates the most obvious obliteration that I've ever witnessed. I don't think anyone would pick that gun up without knowing that it's obliterated serial numbers. So that objection is overruled."

After ruling on Lindsay's other objections to the PSI, and hearing Lindsay's statement in mitigation of his sentence, the government's argument in support of an upward variance, and Lindsay's counsel's argument in support of a sentence

within the advisory Guidelines range, the district court adopted the PSI's recommendations and imposed a 420-month term of imprisonment comprised of: 120 months' imprisonment each for Counts 1 to 3, with the terms to run consecutively; 120 months' imprisonment as to Count 4, to run concurrently with the other counts; 12 months' imprisonment each for Counts 5 and 6, with the terms to run concurrently and concurrently with the other counts; 60 months' imprisonment for Count 7, to run concurrently with all other Counts; and 60 months' imprisonment for Count 8, to run consecutively to Counts 1, 2, and 3. The district judge then stated:

> In making this decision, I have consulted the advisory sentencing guidelines and calculated the applicable advisory range of 168 to 210 months. I then made an effort to determine if pursuant to the guideline policy statements that any sentence outside of the advisory range were clearly appropriate. In this case, I do find that the guidelines provide limited grounds for an upward departure, which includes multiple acts of obstructive conduct under [U.S.S.G. § 5K2.0], factors not adequately taken into account by the guidelines, second, the use of more than one minor in this criminal conduct, which is pursuant to [U.S.S.G. § 3B1.4], and the inadequacy of your criminal history category pursuant to [U.S.S.G. § 4A1.3].
>
> However, even with a guided departure under the guidelines, but based upon the above factors, I find this sentence would still not be sufficient in your case. And I then considered all of the factors in [18 U.S.C. § 3553(a)].

The district court then discussed and applied to the facts of the case the § 3553(a) factors and stated that Lindsay's extensive history of criminal acts, which

gave him more than <u>twice</u> as many points as were necessary to be placed in criminal history category VI, indicated that he would continue to be involved in violent acts in the future. The court highlighted that such a criminal history was particularly noteworthy because Lindsay was only 24 years old, and that the criminal history and obstructive conduct demonstrated that Lindsay had little respect for the law. The court found that there was no unwarranted sentencing disparity resulting from the term imposed here because "any defendant appearing before this court with the type of criminal record and type of offenses and convictions that you have would be facing a similar sentence based upon the multiple aggravating factors I've just discussed." Finally, the court noted that it considered the advisory Guidelines range and found that it was not "by any means . . . sufficient in [this] case." This appeal followed.

## II.

First, Lindsay contends that the district court erred by accepting his guilty plea because there was an insufficient factual basis for the plea to be knowing and voluntary, in violation of Rule 11(b)(3) and the Due Process Clause of the Fifth Amendment.[2] Lindsay asserts that at the plea colloquy, he denied that he knew the

---

[2]The government suggests that Lindsay waived his ability to bring this appeal by entering an unconditional guilty plea. We disagree. In the instant appeal, Lindsay asserts that his guilty plea was not knowing and voluntary because he was not informed of the elements of one of the crimes to which he pled. While it is true that an unconditional guilty plea constitutes a waiver of all non-

Lorcin .380 caliber handgun was obliterated and the government failed to establish a sufficient factual basis as to the scienter element for the § 922(k) crime with which he was charged. Thus, he says, his guilty plea to that crime was not knowing and voluntary, as required by Rule 11 and due process.

The applicable standards of review are well-settled. Generally, the district court's "factual finding that the requirements of [Fed. R. Crim. P.] 11 were satisfied when it accepted the defendants' pleas is subject to the clearly erroneous standard of review." United States v. Lopez, 907 F.2d 1096, 1099 (11th Cir. 1990). Lindsay, however, did not raise his due process or Rule 11 arguments in the district court, either by objecting or by moving to withdraw his guilty plea. Constitutional objections and alleged violations of Rule 11 that were not raised before the district court are reviewed only for plain error. See United States v. Moriarty, 429 F.3d 1012, 1018-19 (11th Cir. 2005) (per curiam). To establish plain error, a defendant must show (1) error, (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity, or public

---

jurisdictional arguments, it is well-settled that for a plea to effect such a waiver, the plea itself must be knowing and voluntary. See Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992) ("A defendant who enters a plea of guilty waives all non-jurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained."); United States v. Fairchild, 803 F.2d 1121, 1124 (11th Cir. 1986) (holding that a knowing and voluntary guilty plea waives all non-jurisdictional defects in the proceedings against a defendant); United States v. Yunis, 723 F.2d 795, 796 (11th Cir. 1984) (same).

13

reputation of judicial proceedings.  See United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir.), cert. denied, 545 U.S. 1127 (2005).

The Supreme Court has held that "a defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea."  United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004).  "A defendant must thus satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding."  Id.  This requirement mirrors the third prong of the plain error test, which "requires that an error have affected substantial rights, which almost always requires that the error must have affected the outcome of the district court proceedings."  Rodriguez, 398 F.3d at 1299.  In reviewing the entire record to gauge the effect of an error on a defendant's substantial rights, the Supreme Court recognized the obvious: when the record made for a guilty plea and sentencing reveals strong evidence and no apparent defenses, "one can fairly ask a defendant seeking to withdraw his plea what he might ever have thought he could gain by going to trial."  Dominguez Benitez, 542 U.S. at 83.

14

To satisfy the requirements of due process, a guilty plea must be entered into knowingly and voluntarily. Moriarty, 429 F.3d at 1019. To determine that a guilty plea is knowing and voluntary, the district court must address the three core concerns of Rule 11 at the plea colloquy, which are that the "defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." Id.; see United States v. Frye, 402 F.3d 1123, 1127 (11th Cir. 2005); see also Fed. R. Crim. P. 11(b)(1)(G) (requiring the district court to determine that the defendant understands "the nature of each charge to which the defendant is pleading"). In this appeal, Lindsay argues the district court did not comply with the second core concern of Rule 11 because the court did not apprise him of, and the government did not establish a factual basis to support a finding on, one of the elements of the § 922(k) offense to which he pled.

The Supreme Court has held that a guilty plea is not voluntary if the defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Marshall v. Lonberger, 459 U.S. 422, 431 (1983). We review each case individually to ensure that the defendant understood the nature of the charges because the Rule 11 inquiry will necessarily vary from case to case. United States v. James, 210 F.3d 1342, 1344 (11th Cir. 2000). "In considering whether a Rule 11 error occurred or prejudiced a

15

defendant, we may consider the whole record, not just the plea colloquy." Moriarty, 429 F.3d at 1020 n.4; see also United States v. Monroe, 353 F.3d 1346, 1350 (11th Cir. 2003) ("[I]n the Rule 11 context, the reviewing court may consult the whole record when considering the effect of any error on substantial rights." (quotation omitted)).

After reviewing the record from the plea hearing as a whole, we will affirm the district court, "if the record provides a basis for the court's finding that the defendant understood what he was admitting and that what he was admitting constituted the crime charged." Lopez, 907 F.2d at 1099. The Supreme Court has stated that in determining whether there is a factual basis for a plea under Rule 11, "[t]he judge must determine that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty." McCarthy v. United States, 394 U.S. 459, 467 (1969). The standard for evaluating challenges to the factual basis for a guilty plea is whether the district court was presented with evidence from which it could reasonably find that the defendant was guilty. United States v. Owen, 858 F.2d 1514, 1517 (11th Cir. 1988) (per curiam). In advising a defendant of the nature of the charges against him, there is no requirement in Rule

16

11(c) "that a district court must list each element of the offense *seriatim*." United States v. Wiggins, 131 F.3d 1440, 1442-42 (11th Cir. 1997).

Lindsay asserts that the district court failed to inform him that the government would have to prove that he knew of the obliteration to the Lorcin handgun, and that this omission constituted a violation of the second core concern of Rule 11. On this record, we discern no error that was plain and that affected Lindsay's substantial rights.

Under 18 U.S.C. § 922(k), it is illegal to knowingly possess any firearm that has had the serial number obliterated. In addition, 18 U.S.C. § 924(a)(1)(B) states that anyone who "knowingly violates [§ 922(k)]" is subject to imprisonment. While we have not directly addressed the issue, other circuits have consistently held that the defendant must know of the obliteration to be convicted under § 922(k). See United States v. Thornton, 463 F.3d 693, 699 (7th Cir. 2006); United States v. Sullivan, 455 F.3d 248, 261 (4th Cir. 2006); United States v. Haywood, 363 F.3d 200, 206 (3d Cir. 2004) (citing cases from the 1st, 2d, 5th, and D.C. Circuits). For purposes of evaluating the district court's compliance with Rule 11 as to the § 922(k) charge in this case, we will assume that knowledge of the obliteration is an element of the crime.

17

At the plea colloquy, the government proffered that it would present the testimony of "a number of witnesses" concerning Lindsay's possession of the firearm on numerous occasions, as well as his conduct in storing it and retrieving it from Alex Burkholter's house on other occasions. Moreover, based on Lindsay's sentencing objection to the enhancement of his offense level for use of an obliterated weapon, the record contains the testimony of many of the government's witnesses, including Alex Burkholter, who described Lindsay's possession of the Lorcin .380 handgun. Again, in reviewing an alleged Rule 11 error, "we may consider the whole record, not just the plea colloquy." Moriarty, 429 F.3d at 1020 n.4; Monroe, 353 F.3d at 1350.[3]

At the plea colloquy, Lindsay's counsel stated that Lindsay had indicated he "didn't really know that the obliterated serial number was there." Counsel said that he had informed Lindsay that it could be "real knowledge that he knew" or "he should have known" of the obliteration. In response, the district court confirmed

---

[3]In explaining which parts of the record may be included in a court's review of a Rule 11 violation, the Supreme Court, in United States v. Vonn, 535 U.S. 55 (2002), stated that:

> The Advisory Committee intended the effect of error to be assessed on an existing record, no question, but it did not mean to limit that record strictly to the plea proceedings: the enquiry "'must be resolved solely on the basis of the Rule 11 transcript' and the other portions (e.g., sentencing hearing) of the limited record made in such cases." Advisory Committee's Notes 1569 (quoting United States v. Coronado, 554 F.2d 166, 170, n. 5 (C.A. 5 1977)).

535 U.S. at 74 (emphasis added).

18

with Lindsay that he admitted to possession of the weapon, which the district court later described, at the sentencing hearing, as having "the most obvious obliteration that I've ever witnesses." Moreover, at the sentencing hearing, the government presented the testimony of Special Agent Williams and Officer Moretz, both of whom described the fresh coat of paint that they discerned on the firearm when it was retrieved from Alex Burkholter's bedroom, where Lindsay was arrested.

The Fourth Circuit is one of our sister courts to have addressed the elements of a § 922(k) offense. In discussing the knowledge requirement, the court said: "The defendant must know of the alteration. Knowledge of defacement of the serial number may be inferred where the defendant has possessed the gun under conditions under which an ordinary man would have inspected the pistol and discovered the absence of a serial number." Sullivan, 455 F.3d at 261 (citing United States v. Haywood, 363 F.3d 200, 206 (3d Cir. 2003), and United States v. Moore, 54 F.3d 92, 101 (2d Cir. 1995)). Although Sullivan involved a defendant's challenge to the sufficiency of the evidence to support a jury verdict, and thus the appeal presented a different procedural context and involved different standards of review, the Fourth Circuit's holding that the jury reasonably could have inferred knowledge of the obliteration, where the defendant regularly carried and possessed the obliterated weapon, is instructive here. See also United States v. Thorton, 463

19

F.3d 693, 699 (7th Cir. 2006) (holding that circumstantial evidence of defendant's control over a firearm with an obliterated serial number could support the jury's finding that the defendant knew the serial number had been obliterated, "given that one need only look at the gun to attain that knowledge").

From our review of the entire record, including the plea colloquy, the PSI, and the sentencing transcript, we cannot say that Lindsay has satisfied his burden on the first prong of the plain-error test -- to establish error relating to the factual basis for his plea. On the record before us, we are satisfied that, like the factfinder in Sullivan (and Thornton), the district court was presented with evidence from which it could reasonably find that the defendant was guilty. See Owen, 858 F.2d at 1517 (standard for evaluating challenges to the factual basis for a guilty plea is whether the district court was presented with evidence from which it could reasonably find that the defendant was guilty). Accordingly, we discern no error, plain or otherwise, based on Rule 11 or due process.[4]

---

[4] Moreover, even if we were to find error that was plain, Lindsay's appeal would fail on the third prong of the test for plain error. He has not contended, much less offered evidence showing, that, but for the court's failure to instruct him explicitly on the knowledge element of a § 922(k) offense, he would not have pled guilty. See Dominguez Benitez, 124 S. Ct. at 2340. The evidence against Lindsay was strong, and it is unclear what benefit he could possibly have received by withdrawing his plea and proceeding to trial. "When the record made for a guilty plea and sentencing reveals [strong evidence of guilt] . . . one can fairly ask a defendant seeking to withdraw his plea what he might ever have thought he could gain by going to trial." Id.

Next, Lindsay argues the district court erred by imposing an upward departure, pursuant to U.S.S.G. § 4A1.3, based on the inadequacy of his criminal history. The government responds that the district court applied a variance, rather than an upward departure, because the court rested its determination on the 18 U.S.C. § 3553(a) factors and not § 4A1.3 of the Guidelines. In determining whether a decision to sentence a defendant above the Guidelines range is a variance or a departure, we have considered two factors: (1) whether the sentencing court cited to a specific departure provision in the guidelines, and (2) whether the district court noted the inadequacy of the guidelines range. See United States v. Eldick, 443 F.3d 783, 788 & n. 2 (11th Cir.), cert. denied, 127 S. Ct. 251 (2006).

After Eldick, we have expanded on the distinction between an upward departure and a variance. See United States v. Irizarry, 458 F.3d 1208 (11th Cir. 2006), pet. for cert. filed, (U.S. Oct. 26, 2006) (No. 06-7517). In Irizarry, the district court imposed a statutory maximum sentence of 60 months' imprisonment after it had calculated a Guidelines range of 41 to 51 months. Id. at 1210. We determined that the higher-than-Guidelines sentence was a variance, not an upward departure, noting the following: (1) the district court considered the adequacy of its

correctly-calculated advisory guidelines range "in light of the § 3553(a) factors and the evidence presented at the sentencing hearing," and (2) it was clear that the district court was exercising "its post-Booker discretion to impose a reasonable sentence outside the sentencing guidelines range," because the district court had concluded that a sentence within the range was inadequate to address one of the specific § 3553(a) factors, to protect the public. Id. at 1211-12.

Here, just like in Eldick and Irizarry, the district court's decision to impose a higher-than-Guidelines sentence was based on the § 3553(a) factors, as stated by the court during the sentencing hearing and recommended by the PSI, which the district court adopted. The district court stated that the advisory Guidelines range was 168 to 210 months' imprisonment and noted, on numerous occasions, the inadequacy of the range, in light of Lindsay's recidivism, the need for deterrence and protection of the public, the violent nature of the firearms offenses, and the involvement of numerous juveniles in the commission of the offenses. In short, because the district court did not reference a Guideline as support for the higher sentence, but repeatedly discussed facts pertaining to the § 3553(a) factors, we readily conclude that the sentence was a variance, and not an upward departure.

IV.

Finally, Lindsay contends that his sentence was not reasonable within the meaning of United States v. Booker, 543 U.S. 220 (2005). After Booker, we review the defendant's ultimate sentence for reasonableness. United States v. Winingear, 422 F.3d 1241, 1244 (11th Cir. 2005). The Supreme Court recently elaborated on reasonableness review, noting that "appellate 'reasonableness' review merely asks whether the trial court abused its discretion." Rita v. United States, --- S. Ct. ---, 2007 WL 1772146, at *9 (Jun. 21, 2007). "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both that record and the factors in § 3553(a)." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). A district court is not required to state "that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005). Moreover, we have stated that "there is a range of reasonable sentences from which the district court may choose . . ." Talley, 431 F.3d at 788.

Lindsay's total sentence of twice the maximum applicable guidelines range without any departures is clearly severe, but on this record we cannot conclude it was unreasonable, or an abuse of the district court's discretion under Booker. Rather, the district court gave a detailed discussion of its consideration of the

§ 3553(a) factors when it sentenced Lindsay. The court considered, inter alia, the severity of Lindsay's crime, the victims and the number of innocent people put at risk by his crimes, his past criminal conduct, and the obstructive conduct Lindsay engaged in after he was arrested.[5] The district court specifically noted that it could have relief on some of these facts to depart above the otherwise applicable guidelines range but, instead, chose to exercise its discretion to impose a upward variance based on the § 3553(a) factors because the court did not believe that a Guideline departure sentence would provide sufficient punishment.

So long as the resulting sentence reflects consideration of the § 3553(a) factors and is reasonable, it is within the district court's discretion to impose the sentence. See Talley, 431 F.3d at 788. Moreover, in light of the extreme nature of Lindsay's current crimes, his extensive criminal history, and his numerous attempts to obstruct justice while he was incarcerated, the total sentence imposed

---

[5]    According to the PSI, while he was in local custody at the Escambia County Jail and prior to his federal indictment, Lindsay made several phone calls to potential witnesses about their testimony at his trial. These jail-house phone calls were recorded by the authorities. Lindsay told one witness: "don't talk to the feds, don't flip on me when I go to trial." In other phone calls, he discussed bribing potential witnesses, including Quantas Culbert, at whom Lindsay fired shots on September 1, 2005, and Edwin Gibbons, at whom Lindsay brandished a gun on September 15, 2005 and stated, "I'll do as I want to. I'm 23 years old, and I'll cap you." In yet another conversation, Lindsay said he needed "to have somebody 'F' Alex [Burkholter] up." Most of the witnesses involved were juveniles, and Lindsay's phone privileges eventually were revoked, after the witnesses' parents contacted authorities with their concerns for their children's safety. Even after his phone privileges were cancelled, Lindsay continued to contact the potential witnesses, either by having other inmates place "three-way" phone calls or by using a contraband cell phone in his cell to text-message and call witnesses.

by the district court was not outside of the "range of reasonable sentences from which the district court may choose." Id. Therefore, we find that Lindsay has failed to establish that his total sentence is unreasonable under Booker. The Sentencing Guidelines advisory range was calculated correctly, and the district court expressly considered that range and the § 3553(a) factors in imposing sentence.

**AFFIRMED.**